WALLACE, Judge.
Bobby Martin Watson challenges his judgment and sentence for abuse of an elderly person, a violation of section 825.102(1), Florida Statutes (2010). Because the State failed to establish that the victim of the alleged offense qualified as an “elderly person” within the meaning of the statute, we reverse.
I.THE FACTUAL BACKGROUND
James Eugene Murphy, the victim of the alleged offense, lived alone in a single-family residence in St. Petersburg.[1] Before the incident in question, Mr. Murphy had met Mr. Watson through a mutual acquaintance. Mr. Watson had been inside Mr. Murphy’s residence, and he knew where Mr. Murphy kept his wallet.
On August 28, 2010, Mr. Watson knocked on Mr. Murphy’s door, and Mr. Murphy allowed Mr. Watson to enter the residence. The two men spoke briefly. Then, Mr. Watson asked Mr. Murphy for some money. Mr. Murphy declined this request, and Mr. Watson became more insistent. Mr. Murphy responded by telling Mr. Watson to leave.
Instead of leaving, Mr. Watson physically attacked Mr. Murphy. Mr. Watson beat Mr. Murphy, forced him to the floor, and strangled Mr. Murphy until he lost consciousness. When Mr. Murphy regained consciousness, Mr. Watson was gone. Mr. Murphy cleaned up the blood on the floor and checked to see if his wallet was in its place. It was missing. In response to Mr. Murphy’s call for help, paramedics responded and treated him at the scene for his injuries. Mr. Murphy was not hospitalized.
After the incident, Mr. Murphy can-celled the credit cards that had been in his wallet and arranged for the replacement of his missing driver’s license. Later, a man who lived about four blocks away from Mr. Murphy found the wallet and returned it. The credit cards and the driver’s license were still in the wallet, but Mr. Murphy’s cash — about forty dollars — was gone.
II.THE STATE’S CHARGING DECISION
The recital of these facts suggests that the State had a “slam dunk” case against Mr. Watson for strong-arm robbery under section 812.13(1), (2)(c), Florida Statutes (2010). See Jones v. State, 652 So.2d 346, 349-50 (Fla.1995); Mitchell v. State, 407 So.2d 343, 343-44 (Fla. 4th DCA 1981). Instead, for reasons unexplained in our record, the State charged him with the abuse of an elderly person under section 825.102(1).[2] Strong-arm robbery is a second-degree felony, and abuse of an elderly person is a third-degree felony. §§ 812.13(2)(c), 825.102(1).
III.THE STATUTE
Section 825.102(1) provides as follows:
*979 (1) “Abuse of an elderly person or disabled adult” means:
(a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;
(b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.
A person who knowingly or willfully abuses an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.Ó83, or s. 775.084.
Section 825.101(5) defines the term “elderly person” as follows:
“Elderly person” means a person 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person’s own care or protection is impaired.
Thus, as used in the statute, “elderly person” is a defined term that means something substantially more than a person who is sixty years of age or older.
III. FRAMING THE ISSUE
The recital of the factual background and our examination of the statute bring us to the issue we are called upon to resolve.[3] At trial, the State presented a prima facie ease that Mr. Watson had abused Mr. Murphy within the meaning of the statute. The beating and strangulation would certainly qualify as “intentional infliction of physical or psychological injury” under section 825.102(l)(a). Thus the issue before us is whether Mr. Murphy qualified as an “elderly person” within the meaning of section 825.101(5). Before analyzing this issue, it will be necessary to provide additional information about Mr. Murphy, the alleged “elderly person.”
Unquestionably, Mr. Murphy was more than sixty years of age. When the incident occurred, he was seventy-nine; Mr. Murphy was still seventy-nine at the time of trial, less than a year after the incident. Mr. Murphy testified that he had undergone a hip replacement, heart surgery, back surgery, and the insertion of four stents. Nevertheless, at the time of the incident, Mr. Murphy was living alone in his home in St. Petersburg. Mr. Murphy walked unassisted into the courtroom, and there is no mention in the record that he had any observed disability or weakness.
Mr. Murphy testified that he had “always been active and ... played tennis for many years.” When arthritis limited his ability to play tennis, Mr. Murphy began riding a bicycle so that he could continue “to stay in pretty good shape.” Mr. Murphy said that he did not suffer from dementia. He conceded that he occasionally would “forget things,” but he denied having a “serious problem.” The evidence showed that after the subject incident, Mr. Murphy successfully coped with the loss of his wallet on his own by cancelling his missing credit cards and by applying for a duplicate driver’s license.
*980 A week before the trial, Mr. Murphy had sold his home in St. Petersburg and moved to Georgia to be closer to his family. However, Mr. Murphy planned to continue his independent lifestyle; he intended to rent his own apartment. And Mr. Murphy had flown from Georgia to Florida to testify at the trial without an escort or other assistance. The State did not present any expert witness testimony or other evidence about any infirmities or other conditions that impaired Mr. Murphy’s ability to take care of himself at the time of the subject offense.
IV. THE PARTIES’ ARGUMENTS
At the conclusion of the State’s case, Mr. Watson moved for a judgment of acquittal and argued that the State had failed to establish that Mr. Murphy was an “elderly person” at the time of the alleged offense. Defense counsel argued that the only evidence that supported Mr. Murphy’s status as an “elderly person” was that he was seventy-nine years of age. But there was “no evidence that [he was] suffering from the infirmities of aging” as required under section 825.101(5). Defense counsel argued further that Mr. Murphy had been living alone for the past twenty-five years and that although he had undergone various surgeries, there was no evidence that these surgeries had caused Mr. Murphy to be infirm or to be unable to care for himself. Furthermore, Mr. Murphy walked without assistance, did not require the assistance of a nurse or health care aide, was able to ride a bicycle, and remained in good shape. Finally, defense counsel argued that Mr. Murphy demonstrated that he had the presence of mind to cancel his credit cards and to apply for a new driver’s license when his wallet was stolen. Mr. Murphy did not suffer from any dementia or any significant memory loss.
In response, the prosecutor argued that the State was not required to prove that Mr. Murphy’s ability to protect himself was impaired in order to establish that he qualified as an “elderly person” within the meaning of the statute. Instead, the prosecutor argued that the State could establish that an individual qualified as an “elderly person” in one of three ways: (1) advanced age; (2) organic brain damage; or (3) physical, mental, or emotional dys-functioning “to the extent that the ability of the person to provide adequately for the person’s own care or protection is impaired.” § 825.101(5). Under the prosecutor’s interpretation of the statute, the phrase, “to the extent that the ability of the person to provide adequately for the person’s own care or protection is impaired” applies only to physical, mental, or emotional dysfunctioning and not to the first two manifestations of “the infirmities of aging” mentioned in the statute.
The trial court denied the defense motion for judgment of acquittal and submitted the case to the jury on the theory of abuse of an “elderly person.” The trial court also instructed the jury on the offense of misdemeanor battery under section 784.03(1), Florida Statutes (2010), in accordance with the parties’ agreement.
Y. DISCUSSION
The parties have not cited, and our independent research has not disclosed, any case addressing the definition of “elderly person” contained in section 825.101(5) in circumstances similar to those in this case. The only case remotely on point is Bayer v. State, 788 So.2d 310 (Fla. 5th DCA 2001). In Bayer, the defendant was charged with aggravated manslaughter under section 782.07(2), Florida Statutes. 788 So.2d at 311. To find the defendant guilty of aggravated manslaughter under that subsection, the jury had to *981 find that the victim met the definition of an “elderly person” in section 825.101(5). Id. at 818. The Fifth District found the evidence sufficient to sustain the jury’s verdict of guilty. Id. at 311. But the victim in Bayer was eighty-nine years old, had a feeding tube, and was apparently bedridden. Id. In addition, the issue before the Bayer court was whether the jury instructions given in the trial court on the offense of aggravated manslaughter of an elderly person were erroneous. Thus Bayer provides little guidance here, and we approach the issue presented with a relatively clean slate.
We disagree with the State’s reading of section 825.101(5). In our view, the phrase, “to the extent that the ability of the person to provide adequately for the person’s own care or protection is impaired,” modifies all of the listed manifestations of “the infirmities of aging” mentioned in the statute. Thus, to establish that a person qualifies as an “elderly person” under the statute requires proof of three elements: (1) the person is sixty years of age or older; (2) he or she suffers from one or more of the infirmities of aging resulting in some kind of physical, mental, or emotional dysfunction; and (3) the extent of the person’s resultant dysfunction is such that it impairs his or her ability to provide adequately for his or her own care or protection.
Our reading of the statute is in accord with both its plain meaning and with common sense. Experience teaches that the effects of aging vary widely from individual to individual. A few people are feeble before they reach sixty; others remain strong and lead active lives well into their eighties. In other words, a person’s chronological age is not a reliable indicator of his or her ability to function independently in the world.[4] The purpose of section 825.102 is to provide additional protection for individuals sixty years of age or older when the infirmities of aging result in a dysfunction that impairs their ability to provide adequately for their own care and protection. Even if a person is sixty years of age or older, a person does not qualify as an “elderly person” within the meaning of the statute if he or she does not have an age-related impairment of his or her “ability ... to provide adequately for the person’s own care or protection.” Thus we reject the State’s argument that Mr. Murphy qualified as an “elderly person” simply because he had reached the relatively advanced age of seventy-nine.
The State argued alternatively that the evidence did establish that Mr. Murphy was suffering from the infirmities of aging to the extent that his ability to provide adequately for his own care or protection was impaired. The State pointed out that Mr. Murphy had undergone several sur *982 geries and occasionally forgot things. In addition, he had moved to Georgia to be closer to his family. The relocation— which occurred almost one year after the alleged offense — would make it easier for his family to “keep tabs on him” and to provide assistance as needed.
We disagree with the State’s alternative argument. The evidence showed that Mr. Murphy remained an active and vital man who exercised regularly to stay in shape, lived alone, and functioned successfully in his environment without assistance. In a nutshell, the evidence about Mr. Murphy at the time of the subject offense showed functionality, not dysfunction. Under these circumstances, we conclude that the State failed to present a prima facie case that any infirmity of aging had impaired Mr. Murphy’s ability to provide adequately for his own care and protection. Granted, Mr. Watson was able to overpower Mr. Murphy and strangle him. But this result was not a function of any age-related impairment. Mr. Watson had the advantage of surprise, and he was taller and heavier than his victim. On the facts shown here, the trial court should have granted Mr. Watson’s motion for a judgment of acquittal on the charge of abuse of an elderly person.
VI. CONCLUSION
For the foregoing reasons, we reverse Mr. Watson’s judgment and sentence for abuse of an elderly person. On remand, the trial court shall adjudge Mr. Watson to be guilty of misdemeanor battery and sentence him for that offense.
In closing, we note that the outcome in this case was avoidable. The State could have charged Mr. Watson with strong-arm robbery, a second-degree felony. See § 812.13(1), (2)(c). Instead, it charged him with a third-degree felony that it could not prove.
Reversed and remanded with directions.
DAVIS, J., Concurs.
CRENSHAW, J., Dissents.

. In determining whether substantial, competent evidence exists to support the conviction, we consider the evidence in the light most favorable to the State. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002). At trial, Mr. Watson presented an alibi defense which we need not discuss.

. In the information, the State charged Mr. Watson with abusing “an elderly person or disabled adult.” But the State did not attempt to establish that Mr. Murphy qualified as a "disabled adult.” The trial court submitted the case to the jury only on the theory that Mr. Murphy was an "elderly person.” In its verdict, the jury found Mr. Watson "guilty of ABUSE OF ELDERLY PERSON, as charged.”

. In addition to his point about the denial of his motion for judgment of acquittal, Mr. Watson also argues that the circuit court erred in admitting collateral crime evidence during his trial. This issue is without merit and does not warrant discussion.

. "In the past, aging was thought to be invariably accompanied by diminution in mental and other capacities. A persons [sic] abilities [sic] were thought to deteriorate in direct proportion to their [sic] age. Almost every investigation that has been undertaken on the topic has shown definitively that chronological age and functional ability are not related. Aging as a process of wearing out is related to the concept of biological age, but biological age and chronological age are not correlative .... The concept that a person at age sixty-five, or for that matter seventy or seventy-two inexorably has suffered a loss of ability and functional capacity is completely at variance with known facts.... There is no rational basis for taking age sixty-five as a milestone as [sic] either physical or mental capacity.” Age Discrimination in Employment Amendments of 1977: Hearings on S. 1784 Before the Subcomm. on Labor of the Senate Comm. on Human Resources, 95th Cong., 1st Sess. 174 (1977) (statement of A.E. Gunn, J.D., M.D.) (omissions and use of "sic” in original), quoted in Comment, O'Neil v. Baine: Application of Middle-Level Scrutiny to Old-Age Classifications, 127 U. Pa. L.Rev. 798, 812 (Jan. 1979).