[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12497
_____

Agency No. A029-919-502

JEAN BERNARD GELIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 22, 2016)

Before HULL and MARTIN, Circuit Judges, and WRIGHT,[*] District Judge.

_____

[*] Honorable Susan Webber Wright, United States District Judge, for the Eastern District of Arkansas, sitting by designation.

HULL, Circuit Judge:

Jean Bernard Gelin, a native and citizen of Haiti, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order finding him ineligible for relief from removal based on his criminal conviction for abuse of an elderly person or disabled adult under Florida Statute § 825.102(1). After review and oral argument, we conclude the BIA did not err in finding that Gelin is an illegal, criminal alien and that his criminal conviction constitutes a crime involving moral turpitude ("CIMT"). Accordingly, we dismiss the petition.

## I.    BACKGROUND

In March 1992, Gelin entered the United States illegally. In 2002, Gelin pled guilty in Florida state court to one count of abuse of an elderly person or disabled adult, in violation of Florida Statute § 825.102(1). On December 6, 2011, the Department of Homeland Security ("DHS") denied Gelin's application for Temporary Protected Status due to his 2002 felony conviction.

That same day, DHS issued a Notice to Appear, charging Gelin with removability because: (1) he was an alien present in the United States without being admitted or paroled, under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i); and (2) he was an alien convicted of a CIMT, under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Gelin

2

conceded his removability as an alien illegally present in the United States. Gelin's removability is based on an uncontested non-criminal ground of illegal entry into the United States.

Whether Gelin's conviction is a crime involving moral turpitude is relevant to whether he can show eligibility for discretionary relief from removal in the form of cancellation of removal. This form of relief permits the Attorney General to cancel the removal of certain non-permanent residents if the alien establishes that he has not been convicted of certain criminal offenses, namely those under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2) and 1227(a)(3). See 8 U.S.C. § 1229b(b)(1)(C). Relevant to this case, 8 U.S.C. § 1227(a)(2) describes a certain type of criminal case—a conviction for a crime involving moral turpitude for which a sentence of one year or longer may be imposed. 8 U.S.C. §1227(a)(2)(A)(i).

## A.    The IJ's Decision

On January 22, 2014, the IJ ordered that Gelin be removed from the United States, finding that (a) Gelin was convicted of abuse of an elderly person or disabled adult, in violation of Florida Statute § 825.102(1); and (b) this conviction was categorically a CIMT because the conviction records established that Gelin "knowingly, willfully and intentionally inflicted injury upon an elderly person or disabled adult, or that he intentionally committed an act or actively encouraged another person to commit such an act."

3

**B.    The BIA's Decision**

On May 7, 2015, the BIA dismissed Gelin's appeal.  The BIA stated that Gelin "conceded removability under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i), and thus the only issue on appeal is whether the respondent [Gelin] qualifies for relief from removal."  The BIA then determined that Gelin did not qualify for relief from removal because his conviction under Florida Statute § 825.102(1) categorically qualified as a CIMT.

The BIA stated that: "To determine whether a crime qualifies as a CIMT in cases arising within the Eleventh Circuit, we apply the traditional 'categorical approach,' under which we focus upon the statutory definition of the crime rather than the facts underlying the particular offense.  Fajardo v. U.S. Att'y Gen., 659 F.3d 1303, 1305 (11th Cir. 2011)."  The BIA explained that "[t]he categorical approach requires that 'we analyze whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude.'  Cano v. U.S. Att'y Gen., [709 F.3d 1052, 1053 n.3 (11th Cir. 2013)] (quoting Keungne v. U.S. Att'y Gen., 561 F.3d 1281, 1284 n.3 (11th Cir. 2009))."

Quoting from the statute, the BIA stated "that a person [is] guilty of abuse of an elderly or disabled adult" when:

> A person who knowingly or willfully abuses an elderly [person] or disabled adult without causing great bodily harm, permanent

4

disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

The BIA then concluded that "[u]nder this statute, the State must prove the defendant knowingly or willfully committed one of the three alternatives and that at the time the victim was an elderly person or disabled adult." The BIA quoted the three alternative definitions of "abuse" in § 825.102(1) as follows:

(1) intentional infliction of physical or psychological injury upon an elderly person or disabled adult;
(2) an intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or
(3) active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

The BIA concluded that the statute categorically qualified as a CIMT based on the "mental state required for a conviction" under any of the three subparts of the statute.

The BIA rejected Gelin's argument that his conviction was not categorically a CIMT because he did not know that the victim was a member of a "protected class." The BIA noted that the statute defined an "elderly person" as one manifestly "suffering from the infirmities of aging and physical or mental dysfunction to the extent that personal care or protection is impaired." Second, the BIA determined that Florida case law prohibited conviction under the statute if the victim was "active and self-sufficient," citing Watson v. State, 95 So. 3d 977, 979-

5

80, 982 (Fla. Dist. Ct. App. 2012).[1]   The BIA concluded (1) "the victim's status is a required element of the offense" and (2) there was "no realistic probability that Florida could successfully prosecute an individual under Section 825.102 where the evidence established that the accused was subjectively ignorant of the victim's vulnerable condition."

The BIA concluded that, "[a]s we have determined that section 825.102(1) is a categorical CIMT, we do not address the respondent's [Gelin's] statements regarding a modified categorical analysis."

Finally, the BIA found that, even if a § 825.102(1) conviction was not categorically a CIMT, Gelin had "the burden as an applicant for relief from removal to prove that he 'has not been convicted of an offense under section 212(a)(2) [or] 237(a)(2)' of the Act, 8 U.S.C. § 1182(a)(2), 1227(a)(2)."  The BIA determined that Gelin had not met his burden, as an applicant for relief from removal, of proving that he was not convicted of a CIMT.  The BIA pointed out that Gelin "concedes that his conviction records are 'inconclusive.'"

---

[1] The BIA quoted the definitions of "elderly person" and "disabled adult" in the statute. Specifically, an "elderly person" is someone "60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person's own care or protection is impaired." Fla. Stat. § 825.101(4).  Lack of knowledge of the victim's age is not a defense. Id. § 825.104.  Rather, the victim must outwardly manifest infirmities or dysfunctioning to the extent so described.  See id. § 825.101(4).

"Disabled adult" means a person 18 years of age or older "who suffers from a condition of physical or mental incapacitation due to a developmental disability, organic brain damage, or mental illness, or who has one or more physical or mental limitations that restrict the person's ability to perform the normal activities of daily living."  Id. § 825.101(3).

6

The BIA also noted that Gelin relies on <u>Matter of Sanudo</u>, 23 I. & N. Dec. 968 (BIA 2006), and <u>Matter of Danesh</u>, 19 I. & N. Dec. 669 (BIA 1988).  The BIA explained why "these cases are distinguishable."  As for <u>Sanudo</u>, the BIA stated that the California battery statute in that case included "minimal nonviolent touching" and no intent to harm.  The BIA stated that, in contrast, Florida Statute § 825.102(1) requires a more culpable mental state and "the commission of an intentional act, directed against an especially vulnerable victim, with an intent to injure or conscious disregard of the likelihood of injury."

As for <u>Matter of Danesh</u>, the BIA recognized that the crime in that case—aggravated assault by knowingly causing bodily injury to a peace officer—was a CIMT.  But the BIA stressed that "bodily injury is not necessarily a requirement of a CIMT," citing <u>Keungne</u> as follows:

> <u>See</u> <u>Keungne v. U.S. Att'y Gen.</u>, <u>supra</u>, at 1286-87 (holding that a conviction for criminal reckless conduct under Georgia law still constituted a CIMT in the absence of "actually causing physical injury to another person," as the "good fortune in not injuring or killing someone does not change the quality of [the respondent's] actions or the culpability of his mental state"); <u>see also</u> <u>Matter of O.A. Hernandez</u>, 26 I. & N. Dec. 464, 467 (BIA 2015) (holding that "recklessly engag[ing] in conduct that places another in imminent danger of serious bodily injury" is categorically a crime involving moral turpitude).

## II.    JURISDICTION

As an initial matter, we must review whether we have jurisdiction to entertain Gelin's petition for review.  <u>Sosa–Martinez v. U.S. Att'y Gen.</u>, 420 F.3d

7

1338, 1340 (11th Cir. 2005). When an alien seeking review of a removal order was convicted of a crime involving moral turpitude, our jurisdiction to review the petition is limited to constitutional claims or questions of law. See INA § 242(a)(2)(C), (D), 8 U.S.C. § 1252(a)(2)(C), (D). However, we retain jurisdiction to determine whether Gelin is "(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense." Sosa-Martinez, 420 F.3d at 1340 (quoting Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001)). Gelin does not contest the fact that he is an alien who is subject to removal. Therefore, our review is limited to determining whether Gelin's conviction for abuse of an elderly person or disabled adult is a crime of moral turpitude that disqualifies him for relief from removal. See id. at 1340-41. If so, we lack jurisdiction to review Gelin's final order of removal. Id. at 1341. We review de novo the legal question of whether an alien's conviction qualifies as a crime involving moral turpitude. Cano, 709 F.3d at 1053.[2]

### III.    "MORAL TURPITUDE"

An alien convicted of a CIMT is inadmissible. INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Although the term "moral turpitude" is not defined by statute, this Court has held that it involves an "act of baseness, vileness, or

---

[2] We review only the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1338–39 (11th Cir. 2008) ("When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision.").

depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." Cano, 709 F.3d at 1053 (quotation omitted). In Gelin's case, the BIA quoted and followed our definition in Cano.

This Court has also previously held that uttering a forged instrument, resisting an officer with violence, criminal reckless conduct, second-degree arson, aggravated battery, aggravated child abuse, and misprision of a felony are all crimes involving moral turpitude. See Walker v. U.S. Att'y Gen., 783 F.3d 1226, 1229 (11th Cir. 2015) (Florida offense of uttering a forged instrument); Cano, 709 F.3d at 1053-55 (Florida offense of resisting an officer with violence); Keungne, 561 F.3d at 1287-88 (Georgia offense of criminal reckless conduct); Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1311 (11th Cir. 2006) (Florida offense of second-degree arson); Sosa-Martinez, 420 F.3d at 1342 (Florida offense of aggravated battery); Garcia v. Att'y Gen. of the U.S., 329 F.3d 1217, 1222 (11th Cir. 2003) (Florida offense of aggravated child abuse); and Itani v. Ashcroft, 298 F.3d 1213, 1216 (11th Cir. 2002) (misprision of a felony under 18 U.S.C. § 4).

In resolving whether a conviction involves moral turpitude, this Court applies either the categorical approach or the modified categorical approach, depending on the statutory scheme. Fajardo, 659 F.3d at 1310; see also Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1280 (11th Cir. 2013) (explaining that this Court

also uses either the categorical or modified categorical approach when determining whether a crime qualifies as an "aggravated felony" under the INA).

Both this Court and the BIA have historically utilized the categorical approach to determine whether a conviction for a particular crime qualifies as a CIMT.  Fajardo, 659 F.3d at 1305.  Under the categorical approach, we consider only the fact of conviction and the statutory definition of the offense, rather than the specific facts underlying the defendant's case.  Id.; Donawa, 735 F.3d at 1280. In doing so, we ask "whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude."  Keungne, 561 F.3d at 1284 n.3.

We have cautioned, however, that "[t]his general approach is not without exception."  Donawa, 735 F.3d at 1280.  This Court will instead apply the modified categorical approach when a state statute is "divisible."  Id.  A statute is divisible when it "lists a number of alternative elements that effectively create several different crimes."  Id. at 1281 (citing Descamps v. United States, 570 U.S. ___, ___, 133 S. Ct. 2276, 2285 (2013)).

When the statute is divisible, we may look beyond the fact of conviction and consider a limited class of documents, often called Shepard documents, to determine whether a prior conviction is a qualifying offense under the modified categorical approach.  Id. at 1280; Descamps, 570 U.S. at __, 133 S. Ct. at 2283-

10

84; see also Shepard v. United States, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005) (describing the scope of judicial records that can be relied upon by courts applying the modified categorical approach, which records include, *inter alia*, charging documents, plea agreements, and plea colloquy transcripts); United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006) (providing that unobjected-to facts in a criminal defendant's presentence investigation report are deemed admitted); Fajardo, 659 F.3d at 1305 (stating that, when applying the modified categorical approach, courts may consider "the charging document, plea, verdict, and sentence").

Here, the BIA applied only the categorical approach. On appeal, the parties have briefed the categorical approach.[3] But the parties' briefs have also assumed that the § 825.102(1) statute is divisible and that we can look at the record to see which of the three types of abuse in § 825.102(1) Gelin was convicted of. See Descamps, 570 U.S. at __, 133 S. Ct. at 2283-84; Fajardo, 659 F.3d at 1305. And if we look to the record and the conviction documents, the parties debate which record documents we can consider and what they show. Further, if the record documents are inconclusive, the parties dispute who has the burden of proof to establish eligibility for relief from removal.

---

[3] Gelin's brief submits that only the categorical approach applies. Gelin's reply brief states, "This inquiry is governed by the categorical approach and is limited to an analysis of the statute of conviction." As noted later, we need not, and do not, decide whether this Florida statute is divisible or indivisible because Gelin's conviction qualifies as a CIMT under the categorical approach in any event.

11

Because we conclude that Gelin's conviction categorically qualifies as a CIMT under the least culpable subpart of Florida Statute § 825.102(1), we need not reach any of the subsidiary issues in this case. We hold only that Gelin's felony conviction under § 825.102(1) categorically qualifies as a CIMT and explain why.

## IV.    FLA. STAT. § 825.102(1)

As did the BIA, we begin and end with the Florida statute and Florida case law. Florida Statute § 825.102(1), currently and at the time of Gelin's conviction, provides, in relevant part, that:

> A person who knowingly or willfully abuses an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree[.]

Fla. Stat. § 825.102(1). The elements of § 825.102(1) are: (1) knowing or willful; (2) abuse of an elderly person or disabled adult; (3) without causing great bodily harm, permanent disability, or permanent disfigurement.

Section 825.102(1) defines the second element, "abuse," in three alternative ways:

(a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;

(b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or

(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

12

Fla. Stat. § 825.102(1).  Thus, the State can prove the element of "abuse of an elderly person or disabled adult" in one of three ways: (a) intentional infliction of injury; (b) committing an intentional act that could reasonably be expected to result in injury; or (c) active encouragement of another person to commit an act that results or could reasonably be expected to result in injury.[4]

In Gelin's criminal case, the 2002 judgment listed the offense statute as "825.102(1)" and did not specify a subsection of conviction.  The charging information largely tracked the language of the statute and charged all three subsections and crimes as follows:

> [Gelin] . . . did knowingly or willfully, in violation of Florida Statute 825.102(1), intentionally inflict physical or psychological injury upon Daniel Rodriguez, an elderly person or disabled adult, or intentionally commit an act or actively encourage another person to commit an act which could reasonably be expected to result in physical or psychological injury to [Daniel Rodriguez].

Normally, we would next examine if this statutory scheme was (1) divisible, creating multiple crimes of abuse with multiple elements, or (2) indivisible, creating multiple means to commit one crime.  See Mathis v. United States, 579 U.S. ___, __, 136 S. Ct. 2243, 2248-49 (2016).  We need not decide that

---

[4] "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction.  At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty."  Mathis v. United States, 579 U.S. ___, __, 136 S. Ct. 2243, 2248 (2016) (citations and quotation marks omitted).

13

divisibility question because the least culpable act—§ 825.102(1)(c)—categorically constitutes a CIMT in any event.

## V.    FLA. STAT. § 825.102(1) IS A CIMT

Whether "abuse of an elderly person or disabled adult" is a crime involving moral turpitude is a question of first impression in this Circuit, but one that we readily answer in the affirmative.  Like the aggravated child abuse charge at issue in Garcia, abuse of the elderly or disabled is "[a]n act of baseness, vileness, or depravity" that "is so offensive to American ethics as to end the debate of whether moral turpitude was involved in the crime[.]"  See Cano, 709 F.3d at 1053; Garcia, 329 F.3d at 1222 (citing Guerrero de Nodahl v. INS, 407 F.2d 1405, 1406-07 (9th Cir. 1969)).  Even the least culpable conduct necessary to sustain an abuse conviction under Florida Statute § 825.102(1) constitutes a CIMT.

To be convicted of the least culpable conduct contained in § 825.102(1), the State must prove these elements: (1) the knowing or willful; (2) active encouragement of another person to commit an act (3) that results, or could reasonably be expected to result, in physical or psychological injury to an elderly person or disabled adult; (4) without causing great bodily harm, permanent disability, or permanent disfigurement.  Fla. Stat. § 825.102(1)(c).  In analyzing whether this § 825.102(1)(c) offense constitutes a CIMT, we may rely on court decisions in the convicting jurisdiction that interpret the meaning of the statutory

14

language.  See Cano, 709 F.3d at 1054 (using Florida state case law to help elucidate whether a Florida statute prohibiting resisting a law enforcement officer with violence qualified as a CIMT);  United States v. Howard, 742 F.3d 1334, 1346 (11th Cir. 2014) ("Sentencing courts conducting divisibility analysis in this circuit are bound to follow any state court decisions that define or interpret the statute's substantive elements[.]"); see also Mathis, 579 U.S. at__, 136 S. Ct. at 2256 (explaining that, in determining whether a statute's listed items are elements or means, federal courts may look to state court decisions interpreting an alternatively phrased statute for guidance).

A violation of Florida Statute § 825.102(1)(c) qualifies as a CIMT because of (1) the culpable state of mind required by the statute, and (2) the particularly vulnerable nature of the victims.  See Keungne, 561 F.3d at 1284 n.3; Fla. Stat. § 825.102(1)(c).

## A.    Culpable State of Mind

In our prior CIMT case law, this Court has looked to the level of intent involved in an offense to determine whether an act was sufficiently base, vile, or depraved.  See Cano, 709 F.3d at 1054.  Here, the standard jury instructions for Florida Statute § 825.102(1) instruct that, to obtain a guilty verdict, the State must prove a defendant's "knowing or willful" commission of subsection (a), (b), or (c). See In re Standard Jury Instructions in Criminal Cases—Report No. 2012-08, 131

15

So. 3d 692, 703 (Fla. 2013). This comports with our reading of the statute that "knowing or willful" conduct is the first element.

In addition, the Florida courts have indicated that a knowing or willful act of "active encouragement" requires more than culpable negligence. A Florida court has addressed the state of mind necessary to violate Florida's nearly identical child-abuse statute[5] that proscribes knowing or willful "[a]ctive encouragement of any person to commit an act that results or could reasonably be expected to result" in injury to a child. The Florida court concluded that intent is an "essential element" of the crime of child abuse, noting that "child abuse requires an intentional act, knowing or willful." Griffis v. State, 848 So. 2d 422, 425, 427 (Fla. Dist. Ct. App. 2003); see also Pethtel v. State, 177 So. 3d 631, 635 (Fla. Dist. Ct. App. 2015) (concluding that voluntary manslaughter carries a "much broader ambit of intent" than child abuse because manslaughter does not require that the defendant "actually intend" to kill or injure nor does it require "an element of foreseeability" between the defendant's act and the resulting harm). The Florida

---

[5] Florida law states that whoever "knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement" commits a third-degree felony. Fla. Stat. § 827.03(2)(c). The statute defines "child abuse" as:
  (1) Intentional infliction of physical or mental injury upon a child;
  (2) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
  (3) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
Id. § 827.03(1)(b).

court in Griffis expressly rejected a jury instruction that child abuse could be committed through "culpable negligence," because that was instead an element of child neglect under § 827.03(2)(b) and (d).  Griffis, 848 So. 2d at 427-28. Similarly, the Florida statute at issue here also contains a separate prohibition of the neglect of an elderly person or disabled adult, which can be shown through "culpable negligence."  Fla. Stat. § 825.102(3).  In contrast, § 825.102(1)(c) requires the knowing or willful active encouragement of another person to commit an unlawful act, which requires a sufficiently culpable state of mind to constitute a CIMT.

Furthermore, both this Court and the BIA have held that "moral turpitude may inhere in criminally reckless conduct."  Keungne, 561 F.3d at 1284 (citing Matter of Franklin, 20 I. & N. Dec. 867, 869-70 (BIA 1994) (concluding that involuntary manslaughter was a CIMT where state law required that the individual acts "recklessly," or when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation") and Matter of Medina, 15 I. & N. Dec. 611, 613 (BIA 1976) (finding that the Illinois aggravated assault was a CIMT where one of the three culpable mental states was recklessness)).

In Keungne, this Court held that a conviction under Georgia's criminal

17

reckless conduct statute[6] qualified as a CIMT for three reasons: (1) it involved an individual "consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm <u>or endanger the safety of the other person</u>"; (2) it required that "a person's conduct must go far beyond mere negligence so as to constitute a 'gross deviation' from the standard of care expected from a reasonable person"; and (3) it required that this gross deviation cause harm <u>or endanger the safety of another person</u>. <u>Keungne</u>, 561 F.3d at 1286-87 (emphasis added).

Thus, when "[c]onsidering the totality of these required elements" in <u>Keungne</u>, this Court determined that the Georgia statute comprehended a "sufficiently culpable mental state" to qualify as a CIMT, even though the statute required that a defendant merely "endanger" the safety of another through "consciously disregarding a substantial and unjustifiable risk," such that the defendant's act need not be willful or knowing or even cause actual harm or injury to another person. <u>Id.</u>

Here, the criminal intent required under the Florida statute is not merely a gross negligence standard, as Gelin argues; it is, in fact, even more culpable than the recklessness standard at issue in <u>Keungne</u>.  "Active encouragement" of an

---

[6] That Georgia statute provided that: "A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm <u>or endanger the safety of the other person</u> and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."  O.C.G.A. § 16-5-60(b) (emphasis added).

18

unlawful act is itself an intentional act, and not recklessness or gross negligence. Plus, § 825.102(1) requires that the intentional act be knowingly or willfully committed. Further, the statute narrows the type of intentional act proscribed to an act that results, or could reasonably be expected to result, in injury. Thus, the type of act intentionally encouraged must be one that results in or could reasonably cause injury. A defendant's intentionally encouraging that type of act necessarily requires that the defendant intended injury or a real likelihood of injury. Indeed, analogous Florida case law instructs us that all of the acts contemplated in Florida Statute § 825.102(1) require an intentional act and may not be satisfied merely by a showing of "culpable negligence." See Griffis, 848 So. 2d at 427-28. For these reasons, we are convinced that Florida Statute § 825.102(1)(c) requires a sufficiently culpable mental state to constitute a CIMT.

We also reject Gelin's argument that a showing of actual bodily injury to the victim is necessary to constitute a CIMT. Whether a criminal act resulted in actual injury to the victim is one factor that may be considered in determining whether an offense was a CIMT. See Danesh, 19 I. & N. Dec. at 673 (holding that aggravated assault by knowingly causing injury to a peace officer constituted a CIMT); Sanudo, 23 I. & N. Dec. at 972-73 (distinguishing California crime of domestic battery from other crimes that were CIMTs because it did not require proof of actual harm to the victim); Keungne, 561 F.3d at 1286-87 (noting that one of the

19

reasons that the Georgia offense of criminal reckless conduct was a CIMT was because the reckless conduct could cause bodily harm or endanger the bodily safety of another person).

But, as the BIA explained here, this does not mean that a showing of bodily injury is a necessary requirement for an offense to be a CIMT. As this Court has noted, so long as one would reasonably expect injury to result, the perpetrator's good fortune in not injuring someone does not reduce his culpability for CIMT purposes. Keungne, 561 F.3d at 1287 ("[T]he fact that a person can be convicted of criminal reckless conduct under Georgia law without actually causing physical injury to another person does not alter the baseness or depravity of the person's actions. [A person's] good fortune in not injuring or killing someone does not [] change the quality of his actions or the culpability of his mental state."); see also Vuksanovic, 439 F.3d at 1311 (finding that second-degree arson, which merely required damage to "any structure," was a CIMT).

## B.    Vulnerable Victims

The fact that the Florida statute requires an intentional act targeted at vulnerable victims further demonstrates that a violation of the statute is morally turpitudinous. There is no crime under § 825.102(1)(c) if the person is not an elderly person or a disabled adult and thus a vulnerable victim.

20

Notably too, under the statutory definitions of those victims and Florida case law, the person's vulnerable status must be proven and manifestly clear to the defendant.  To secure a conviction under § 825.102(1), the prosecutor must prove that the victim outwardly manifests that he is suffering from the infirmities of age to the extent that his ability to care for himself is impaired.  See Fla. Stat. § 825.101(4); Watson, 95 So. 3d at 979-82 (reversing and remanding a § 825.102(1) conviction where the state failed to establish that the victim—who was 79 years old and had a hip replacement, heart surgery, back surgery, and four stents—qualified as an "elderly person" under the statute because he lived independently, exercised regularly, rode a bicycle, and had no "observed disability or weakness").  Similarly, the statutory definition of "disabled adult" requires that the person have a "physical or mental incapacitation" or "physical or mental limitations that restrict the person's ability to perform the normal activities of daily living."  Fla. Stat. § 825.101(3); see Jennings v. State, 920 So. 2d 32, 34-35 (Fla. Dist. Ct. App. 2005) (indicating, in the context of a prosecution for lewd and lascivious molestation of a disabled person, that under the statutory definition of "disabled adult" the person's disabled status must manifest itself in a concrete way to the perpetrator and concluding that the defendant's concession that the victim

21

was "mildly retarded" was not enough alone to meet the definition of "disabled adult").[7]

Florida law requires that statutes must provide a definite warning of the prohibited conduct, "measured by common understanding and practice." Sieniarecki v. State, 756 So. 2d 68, 74 (Fla. 2000) (finding that the "de facto total impairment which [the victim] exhibited clearly falls within" the statutory definition of "disabled adult" contained in Fla. Stat. § 825.101(4) (1997)); see also Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007) (explaining that, in order to find that a statute falls outside the reach of the generic definition, there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime"). Here, given the statutory definition of the types of victims impacted, it is apparent that, measured by common understanding and practice, perpetrators must have subjective knowledge of their victims' vulnerable status.

We need not decide this case based on solely the culpable state of mind or solely the requirement of a vulnerable victim. Both elements are required for a § 825.102(1)(c) conviction. Thus, considering the totality of the circumstances, we

---

[7] Gelin's reliance on Matter of O-, 4 I. & N. Dec. 301 (BIA 1951) (finding that a German statute requiring no knowledge that the person assaulted was a police officer was not a CIMT), is unavailing. The statutory definitions of "elderly person" and "disabled adult," as provided in Fla. Stat. § 825.101(3) and (4) and referenced in the standard jury instruction, *do* require knowledge of the vulnerable state of the victims. See Watson, 95 So. 3d at 980-82; Jennings, 920 So. 2d at 34-35.

22

are convinced that abuse of an elderly person or disabled adult, in violation of Florida Statute § 825.102(1), is a CIMT and inherently involves an "act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." See Cano, 709 F.3d at 1053; Keungne, 561 F.3d at 1287.

## VI.    GELIN'S <u>JOHNSON</u> CLAIM

For the first time on appeal, petitioner Gelin claims that the Supreme Court's recent decision in <u>Johnson v. United States</u>, 576 U.S. __, __, 135 S. Ct. 2551, 2557-58, 2563 (2015) (holding that the residual clause of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague), should be extended to find that the reasonable-expectation-of-injury requirement in § 825.102(1)(b) and (c) is unconstitutionally vague as applied to a CIMT analysis. Gelin argues that the required harm in Florida State § 825.102(1) is speculative and insufficiently defined and is therefore constitutionally infirm.

Regardless of whether Gelin's <u>Johnson</u>-based claim was properly exhausted,[8] we cannot reach it. Gelin argues that Florida Statute § 825.102(1) is unconstitutionally void for vagueness. If this is so, his conviction under that

---

[8] Gelin filed his brief to the BIA in August 2014, before the Supreme Court's June 2015 decision in <u>Johnson</u>, but after the Supreme Court granted certiorari in that case in April 2014. <u>Johnson</u>, 134 S. Ct. 1871 (Mem.) (2014) (granting certiorari).

23

statute would also be unconstitutional.  As such, Gelin is essentially raising a collateral challenge to the validity of his conviction.  A petition for review of an agency's immigration determination is not the correct forum in which to address this claim.  Mohammed v. Ashcroft, 261 F.3d 1244, 1251 (11th Cir. 2001) ("If the Florida trial court erred . . . then [the petitioner's] remedy is a collateral attack on the underlying convictions in Florida state court, not a judicial determination, in the context of a Petition for Review of a[] BIA decision, that he must as a matter of Due Process be eligible for relief from removal.").

Even if we could examine this claim, however, it is meritless because the statutory language at issue in Johnson is wholly different from the Florida statute's language.  Compare Johnson, 576 U.S. at __, 135 S. Ct. at 2555-56 (involving a residual clause that defines a violent felony as any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another"), with Fla. Stat. § 825.102 (prohibiting an intentional act or active encouragement of another to commit an act "that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult").

Moreover, Johnson addressed the deprivation of a criminal defendant's constitutionally protected liberty interest, but "an alien does not have a constitutionally protected interest in receiving discretionary relief from removal or deportation." Mohammed, 261 F.3d at 1250.  Nor does an alien have a

24

constitutionally protected interest in being "eligible for discretionary relief." Oguejiofor v. Att'y Gen. of the U.S., 277 F.3d 1305, 1309 (11th Cir. 2002) (citation omitted).

## VII.   CONCLUSION

Therefore, because a conviction for abuse of an elderly person or disabled adult pursuant to Florida Statute § 825.102(1) is categorically a crime involving moral turpitude, we are deprived of jurisdiction to review Gelin's petition for review under 8 U.S.C. § 1252(a)(2)(C).  See INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); Sosa-Martinez, 420 F.3d at 1340-41.

**PETITION DISMISSED.**

MARTIN, Circuit Judge, dissenting:

The majority concludes that Florida statute § 825.102(1) categorically constitutes a crime of moral turpitude based on the level of intent required by the statute and because it reads the statute to require the defendant to know that the victim is a member of the protected class.  My reading of § 825.102(1) differs from the majority's, so I respectfully dissent.

Section 825.102(1) is as follows:

(1) "Abuse of an elderly person or disabled adult" means:
    (a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;
    (b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or
    (c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

A person who knowingly or willfully abuses an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree[.]

Fla. Stat. § 825.102(1).  As the majority correctly relates, the court's job in determining whether a conviction under this statute constitutes a "crime involving moral turpitude" begins by determining the "least culpable conduct" for which someone could be convicted under the statute.  The answer to this question leads me to the conclusion that a person can be convicted under § 825.102(1) without having committed a crime involving moral turpitude.

26

The investigation into the least culpable conduct calls for the court to look at the types of conduct state courts have recognized violate the statute.  Like the majority, I have reviewed the standard jury instructions promulgated by the Florida Supreme Court for § 825.102(1).  Those instructions show that the government must prove the following two elements:  (1) knowing or willful commission of subsection (a), (b), or (c); and (2) at the time, the victim was an elderly person or disabled adult.  See In re Standard Jury Instructions in Criminal Cases—Report No. 2012-08, 131 So. 3d 692, 703–04 (Fla. 2013).

If a statute encompasses some conduct that would constitute a crime involving moral turpitude and other conduct that would not, then the statute does not categorically involve a crime of moral turpitude.  My reading of the statute does not require the intentional or knowing infliction of injury.  Subsection (1)(b) requires "an intentional act that could reasonably be expected to result in physical or psychological injury."   The intent requirement seems to me to go to the act, not to the harm that might result from the act.  Along this same line, the BIA characterized the intent required under this statute as "conscious disregard of the likelihood of injury," or recklessness.  This is in keeping with the Florida case law interpreting the nearly identical child abuse statute.  See Clines v. State, 765 So. 2d 947, 948 (Fla. Dist. Ct. App. 2000) (holding that the defendant's "irrational, hostile and reckless behavior"—cocking a loaded gun in the same room as a sleeping child

27

and pointing it at the ceiling after threatening the child—was sufficient evidence to support the trial judge's conclusion that the defendant's "intentional acts placed the child in a zone of 'reasonably expected' physical danger"). A person may be convicted under subsection (1)(b) even if the person did not intend to cause injury, so long as the person intended to commit an act, while disregarding the reasonable likelihood of injury.

Second, I do not read § 825.102(1) to require knowledge of the victim's status as a member of the protected class. The statute says that the lack of knowledge of the victim's age is not a defense. Fla. Stat. § 825.104. And the jury instructions do not require the jury to find that the defendant had knowledge of the victim's status. See In re Standard Jury Instructions, 131 So. 3d at 703.

Finally, a person can be convicted under the statute without causing actual injury to the victim. Fla. Stat. § 825.102(1)(b)–(c). Thus, under my reading of the statute, a defendant can be convicted without injuring the victim; without intending to injure the victim; and without knowing that the victim is a member of the protected class.

Moral turpitude is, admittedly, a "nebulous concept." Matter of Danesh, 19 I. & N. Dec. 669, 670 (BIA 1988). But in my view, the least culpable conduct proscribed by the statute does not rise to the level of moral turpitude. For that reason, I respectfully dissent.