[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15100

_____

Agency No. A075-856-276

JOSE LUIS GONZALEZ,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 5, 2017)

Before  TJOFLAT and  JORDAN,  Circuit  Judges,  and  HUCK,[*]  District Judge.

_____

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

HUCK, District Judge:

Jose Luis Gonzalez, a lawful permanent resident, petitions for review of the decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's order that Gonzalez be deported as an alien convicted of a crime involving moral turpitude at the time of his adjustment of status. *See* 8 U.S.C. § 1227(a)(1)(A); 8 U.S.C. § 1182(a)(2)(A)(i)(I). Gonzalez concedes that his 1998 conviction under Fla. Stat. § 843.01 is now considered a crime involving moral turpitude under our precedent. *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052 (11th Cir. 2013). The question before us is whether his conviction fifteen years before *Cano*, which held that Fla. Stat. § 843.01 is a crime involving moral turpitude, is sufficient to sustain his removability under 8 U.S.C. § 1227(a)(1)(A).

## I. BACKGROUND

Gonzalez is a national and citizen of Colombia who was admitted to the United States as a crewman in 1986. In May 1998, Gonzalez was convicted in Miami-Dade County, Florida, of battery in violation of Fla. Stat. § 784.03; battery on a law enforcement officer in violation of Fla. Stat. § 784.07; and resisting an officer with violence in violation of Fla. Stat. § 843.01. This last conviction is the subject of this appeal.

On July 25, 1998, Gonzalez was granted adjustment of status based on his

2

marriage to a U.S. citizen. According to the DHS, Gonzalez did not disclose his conviction under Fla. Stat. § 843.01 in his adjustment of status application. Gonzalez contends that he did disclose the conviction. The record before us demonstrates that Gonzalez checked "Yes" to the question regarding whether he had any sort of criminal history. The record does not contain any further details or discussion regarding this disclosure.

In November 2011, Gonzalez applied for naturalization. In June 2013, the DHS placed Gonzalez in removal proceedings, alleging that he was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(A) because at the time of his adjustment of status he was inadmissible to the United States as an alien who had been convicted of a crime involving moral turpitude for which he had not received a waiver of grounds of inadmissibility.

In January 2015, Gonzalez filed a motion to terminate his removal proceedings, arguing that the DHS had failed to meet its burden of proof to show by clear, unequivocal, and convincing evidence that his conviction was for a crime involving moral turpitude at the time he adjusted status in 1998. In April 2015, the Immigration Judge denied Gonzalez's motion to terminate and sustained the charge of removability. The Immigration Judge compared Gonzalez's 1998 conviction for resisting an officer with violence in violation of Fla. Stat. § 843.01

3

to the 2003 conviction under the same statute of the petitioner in *Cano* and concluded that Fla. Stat. § 843.01 has been, at all times relevant to Gonzalez's case, a crime involving moral turpitude because the statute requires intentional violence against an officer. In July 2015, Gonzalez filed a second motion to terminate, reiterating his earlier arguments. In October 2015, the Immigration Judge issued a written decision denying Gonzalez's second motion to terminate and ordering him removed to Colombia.

Gonzalez filed a timely appeal of the Immigration Judge's decision to the BIA in December 2015. In that appeal, Gonzalez repeated his earlier arguments. On June 23, 2016, the BIA issued a written decision dismissing the appeal. The BIA agreed with the Immigration Judge that Gonzalez's 1998 conviction for resisting an officer with violence in violation of Fla. Stat. § 843.01 is categorically a crime involving moral turpitude. The BIA concluded that because there was no precedential decision holding that a conviction under that statute was not a crime involving moral turpitude in 1998, and because of the BIA's long recognition of the disregard for law and morality inherent in violence against an officer, the DHS had met its burden of proof to establish that Gonzalez was inadmissible at the time he adjusted status. This petition followed.

4

## II. STANDARD OF REVIEW

Where, as here, the BIA issues its own decision, we review the BIA's decision, except to the extent that the BIA expressly incorporates the Immigration Judge's opinion or reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). We review legal issues de novo. *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013). Questions of statutory interpretation are reviewed de novo, while deferring to the interpretation of the BIA if it is reasonable. *Sosa-Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1341 n.2 (11th Cir. 2005).

## III. DISCUSSION

Pursuant to 8 U.S.C. § 1227(a)(1)(A), an alien is removable if, "at the time of . . . adjustment of status [he] was within one or more of the classes of aliens inadmissible by the law existing at such time." An alien is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) if he has been convicted of a crime involving moral turpitude or an attempt to commit such a crime. While "moral turpitude" is not defined by statute, the Eleventh Circuit has stated that "it involves '[a]n act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" *Cano*, 709 F.3d at 1053 (quoting

*United States v. Gloria*, 494 F.2d 477, 481 (5th Cir. 1974)). This definition of moral turpitude has been used consistently since at least 1941. *See In the Matter of G–*, 1 I. & N. Dec. 73, 76 (BIA 1941).

In *Cano*, we held that a conviction under Fla. Stat. § 843.01 is categorically a crime involving moral turpitude. 709 F.3d at 1053, 1055. In particular, we determined that the "offense requires that a defendant '(1) knowingly (2) resisted, obstructed, or opposed a law enforcement officer (3) who was in the lawful execution of any legal duty (4) by offering or doing violence to his person.'" *Id.* at 1054 (quoting *Yarusso v. Florida*, 942 So. 2d 939, 942 (Fla. 2d DCA 2006)). We concluded that "because Fla. Stat. § 843.01 requires intentional violence against an officer, it criminalizes 'conduct [that] exhibits a deliberate disregard for the law, which we consider to be a violation of the accepted rules of morality and the duties owed to society,'" and therefore constitutes a crime involving moral turpitude. *Id.* at 1054–55 (quoting *Matter of Danesh*, 19 I. & N. Dec. 669, 671 (BIA 1988)).

Gonzalez argues that the DHS cannot meet its burden to prove that, at the time of his adjustment of status in 1998, his conviction was a crime involving moral turpitude under "the law existing at such time." 8 U.S.C. § 1227(a)(1)(A). He contends that the burden is on the DHS to prove each element of his ground of deportability, including this temporal element of § 1227(a)(1)(A).

6

Gonzalez maintains that the DHS is unable to meet this burden because there was no legal authority establishing his conviction as a crime involving moral turpitude at the time of his adjustment of status. However, Gonzalez's burden argument is misplaced. The DHS's burden of proof applies to facts and evidence, not legal authority. *See Woodby v. INS*, 385 U.S. 276, 277 (1966) ("[I]t is incumbent upon the Government in [deportation] proceedings to establish the facts supporting deportability by clear, unequivocal, and convincing evidence."). The facts in this case are undisputed, and the DHS has provided sufficient evidence of Gonzalez's conviction three months prior to his adjustment of status. The INA lists documents that "shall constitute proof of a criminal conviction" for removal proceedings, including "an official record of judgment and conviction." 8 U.S.C. § 1229a(c)(3)(B)(i). The DHS provided such evidence. On this record, the Immigration Judge and the BIA assessed Gonzalez's removability and determined that his conviction was for a crime involving moral turpitude.

The absence of published caselaw specifically analyzing Fla. Stat. § 843.01 at the time of Gonzalez's adjustment of status is not indicative that his conviction was not a crime involving moral turpitude in 1998. Rather, Gonzalez's argument cuts both ways. In 1998 there existed no binding precedent from the BIA or this Court holding that a conviction under Fla. Stat. § 843.01 was *not* a crime involving

moral turpitude. Moreover, the BIA has long recognized that violence towards an officer is a crime involving moral turpitude where there is "knowledge of the assaulted person's status as a peace officer and that the officer [is] discharging an official duty," as such conduct involves the use of "violence to intentionally interfere with the lawful functions of a peace officer." *Danesh*, 19 I. & N. Dec. at 673.

Gonzalez relies on a United States Citizenship and Immigration Services Office of Administrative Appeals (AAO) decision issued a week before our decision in *Cano* as evidence that the law was unsettled and that, until *Cano*, a conviction under Fla. Stat. § 843.01 was not categorically determined to be a crime involving moral turpitude. The AAO decision concluded that the applicant, convicted under Fla. Stat. § 843.01, had not committed a crime involving moral turpitude because the record did not reflect that the applicant had caused bodily injury to the officer in the commission of the crime. That the AAO found that the applicant's conviction under Fla. Stat. § 843.01 was not a crime involving moral turpitude is inconsequential because unpublished administrative decisions are not binding precedent on this Court nor on the BIA. *See Viraj, LLC v. U.S. Att'y Gen.*, 578 F. App'x 907, 910 n.2 (11th Cir. 2014) (noting that unpublished USCIS decisions "have no precedential value"). *See also De la Rosa v. U.S. Atty. Gen.*,

579 F.3d 1327, 1336 (11th Cir. 2009) ("[T]he BIA accords no precedential value to its unreported decisions."). Thus, argues Gonzalez, the DHS has not carried its burden of establishing that Fla. Stat. § 843.01 was a crime involving moral turpitude at the time of his adjustment of status in 1998, as the DHS did not consider it such a crime until our *Cano* decision in 2013.

We disagree. Our *Cano* decision, rather than signaling a change in the law, was simply a confirmation that the conduct prohibited by Fla. Stat. § 843.01 was morally turpitudinous. Gonzalez is correct that moral turpitude is a "nebulous concept" that can change over time. *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1249 (11th Cir. 2016) (quoting *Danesh*, 19 I. & N. Dec. at 670). However, Gonzalez's conviction and adjustment of status occurred ten years after *Matter of Danesh*, which is materially indistinguishable from this case.

Gonzalez's conviction under Fla. Stat. § 843.01 would be considered a crime involving moral turpitude even if *Cano* did not exist. The only intent necessary for violation of the statute is "to 'knowingly and willfully' impede an officer in the performance of his or her duties." *Frey v. State*, 708 So. 2d 918, 920 (Fla. 1998). "Such conduct exhibits a deliberate disregard for the law" and "a violation of the accepted rules of morality and the duties owed to society." *Danesh*, 19 I. & N. Dec. at 673. *Matter of Danesh*, therefore, requires the same

9

legal conclusion in Gonzalez's case as it did in *Cano*. The decision to approve

Gonzalez's adjustment of status in 1998, whether or not the agency had knowledge

of his conviction, was an error, and the BIA correctly determined that Gonzalez is

removable under 8 U.S.C. § 1227(a)(1)(A).

## IV. CONCLUSION

For these reasons, Gonzalez's petition is **DENIED.**