[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14501

_____

Agency No. A98-947-656

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 10, 2009
THOMAS K. KAHN
CLERK

CHRETIEN KEUNGNE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 10, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Chretien Keungne, a native and citizen of Cameroon, petitions for review of

the Board of Immigration Appeals' ("BIA") decision affirming the Immigration

Judge's ("IJ") order finding him removable because his conviction under Georgia's

criminal reckless conduct statute, Ga. Code Ann. § 16-5-60(b), constitutes a crime involving moral turpitude. After review and oral argument, we dismiss the petition.

## I. BACKGROUND

In November 2003, Keungne was admitted to the United States as a non-immigrant visitor. In April 2004, he was arrested in Georgia and charged with aggravated assault, false imprisonment, and possession of a knife in the commission of a felony. In August 2006, he pled nolo contendere to two counts of criminal reckless conduct under Ga. Code Ann. § 16-5-60(b), a lesser included offense of the aggravated assault charge. Keungne was convicted and sentenced to 12 months' imprisonment on each count, to be served concurrently.

In September 2006, the Department of Homeland Security ("DHS") administratively ordered Keungne removed from the United States on the grounds that he had been convicted of an aggravated felony. However, the DHS cancelled the September 2006 removal order after Keungne asserted a fear of persecution or torture. Keungne subsequently was served with a Notice to Appear that charged that he was removable based on, inter alia, his conviction of a crime involving moral turpitude within five years of admission for which a sentence of one year or longer may be imposed, pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).

On April 23, 2007, a removal hearing was held before an IJ. At the removal

hearing, Keungne, proceeding pro se, filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Keungne admitted that he was convicted of criminal reckless conduct in 2006 and sentenced to 12 months' imprisonment.

The IJ concluded, inter alia, that Keungne was removable because his reckless conduct conviction was a crime involving moral turpitude.[1] The BIA affirmed the IJ's finding that Keungne was removable under 8 U.S.C. § 1227(a)(2)(A)(i). The BIA stated that "[u]pon consideration of the statutory definition of the respondent's crime, we are persuaded that it is one in which moral turpitude inheres" and cited Knapik v. Ashcroft, 384 F.3d 84 (3d Cir. 2004); In re Solon, 24 I. & N. Dec. 239 (BIA 2007); In re Franklin, 20 I. & N. Dec. 867 (BIA 1994); In re Wojtkow, 18 I. & N. Dec. 111 (BIA 1981); and In re Medina, 15 I. & N. Dec. 611 (BIA 1976).

## II. DISCUSSION

### A. Jurisdiction

---

[1]The IJ also: (1) found that Keungne was not removable for remaining in the United States longer than permitted because he was detained as part of his state criminal offense and unable to depart; (2) determined that Keungne's reckless conduct conviction was an aggravated felony because it was a crime of violence; (3) denied Keungne's asylum application as untimely and barred by his aggravated felony conviction; and (4) denied his claims for withholding of removal and CAT relief. The BIA reversed the IJ's finding that Keungne's reckless conduct conviction was an aggravated felony, but affirmed the IJ's order on all other grounds. Because we agree with the BIA's and IJ's determination that Keungne's reckless conduct conviction was a crime involving moral turpitude, we need not reach the BIA's other conclusions.

3

As an initial matter, we must determine whether we have jurisdiction to entertain Keungne's petition for review. Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1310 (11th Cir. 2006); Sosa-Martinez v. U.S. Att'y Gen., 420 F.3d 1338, 1340 (11th Cir. 2005). This Court lacks jurisdiction to review a final order of removal if the alien is removable under 8 U.S.C. § 1227(a)(2)(A)(i) for being convicted of a crime involving moral turpitude within five years of admission for which a sentence of one year or longer may be imposed. See 8 U.S.C. § 1252(a)(2)(C); Vuksanovic, 439 F.3d at 1310. However, we retain jurisdiction to determine whether the statutory conditions for limiting judicial review exist, i.e., whether Keungne is "'(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense.'" Vuksanovic, 439 F.3d at 1310–11 (quoting Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001)). Keungne does not contest the fact that he is an alien. Thus, our review is limited to determining whether Keungne is removable because his reckless conduct conviction is a crime involving moral turpitude.[2] If so, we lack jurisdiction to review Keungne's final order of removal. Id. at 1311; Sosa-Martinez, 420 F.3d at 1341.

## B. Precedent Defining "Crime Involving Moral Turpitude"

The term "moral turpitude" is not defined by statute. This Court has stated

---

[2]"We review questions of statutory interpretation de novo, but defer to the BIA's interpretation if it is reasonable." Vuksanovic, 439 F.3d at 1311 n.3.

that it involves "'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" Vuksanovic, 439 F.3d at 1311 (quoting Itani v. Ashcroft, 298 F.3d 1213, 1215 (11th Cir. 2002)) (brackets omitted). "'Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct.'" Id. (quoting Itani, 298 F.3d at 1215–16). In other words, the determination that a crime involves moral turpitude is made categorically based on the statutory definition or nature of the crime, not the specific conduct predicating a particular conviction.[3] This Court has concluded that crimes involving moral turpitude include second-degree arson, Vuksanovic, 439 F.3d at 1311; aggravated battery, Sosa-Martinez, 420 F.3d at 1342; aggravated child abuse, Garcia v. Att'y Gen., 329 F.3d 1217, 1222 (11th Cir. 2003); and misprision of a felony, Itani, 298 F.3d at 1216.

The BIA has concluded that moral turpitude may inhere in criminally reckless conduct. Solon, 24 I. & N. Dec. at 240; Franklin, 20 I. & N. Dec. at

---

[3]In the categorical approach, we analyze whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude. See Rodriguez-Castro v. Gonzales, 427 F.3d 316, 320 (5th Cir. 2005); Partyka v. Att'y Gen., 417 F.3d 408, 411 (3d Cir. 2005); Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000).

869–70; Wojtkow, 18 I. & N. Dec. at 112–13; Medina, 15 I. & N. Dec. at 613.[4]  In

Medina, the BIA analyzed whether a conviction under Illinois's aggravated assault

statute, which permitted conviction with only a reckless mental state, was a crime

involving moral turpitude.  15 I. & N. Dec. at 612–13.  The BIA observed that the

Illinois statutory definition of recklessness stated that "[t]he person acting

recklessly must consciously disregard a substantial and unjustifiable risk, and such

disregard must constitute a gross deviation from the standard of care which a

reasonable person would exercise in the situation" and that "[t]his definition of

recklessness requires an actual awareness of the risk created by the criminal

violator's action."  Id. at 613–14.  The BIA found it persuasive that "the violator

must show a willingness to commit the act in disregard of the perceived risk" and

emphasized that "[t]he presence or absence of a corrupt or vicious mind is not

controlling."  Id. at 614.  Based on its analysis of Illinois's recklessness definition,

the BIA concluded that the aggravated assault conviction was a crime involving

moral turpitude.  Id.

Several years later in In re Lopez-Meza, 22 I. & N. Dec. 1188 (BIA 1999)

(en banc), the en banc BIA revisited the question of which crimes with a reckless

---

[4]The BIA has concluded that crimes involving moral turpitude include, inter alia, third-degree assault under New York law, Solon, 24 I. & N. Dec. at 245; involuntary manslaughter under Missouri law, Franklin, 20 I. & N. Dec. at 869–70; aggravated assault on a peace officer under Texas law, In re Danesh, 19 I. & N. Dec. 669, 673 (BIA 1988); and second-degree manslaughter under New York law, Wojtkow, 18 I. & N. Dec. at 113.

mental state involve moral turpitude in addressing a prior conviction for aggravated driving under the influence ("DUI") under Arizona law. As an initial matter, the BIA stated that simple DUI "is ordinarily a regulatory offense that involves no culpable mental state requirement, such as intent or knowledge," and agreed with the IJ that it "does not, without more, reflect conduct that is necessarily morally reprehensible or that indicates such a level of depravity or baseness that it involves moral turpitude." Lopez-Meza, 22 I. & N. Dec. at 1194.

However, the BIA noted that the petitioner was convicted of aggravated DUI, defined as "committing a DUI offense while knowingly driving on a suspended, canceled, or revoked license or by committing a DUI offense while already on a restricted license owing to a prior DUI." Id. at 1194–95. The BIA concluded that aggravated DUI was a crime involving moral turpitude, despite the absence of a particular intent requirement, "because the aggravated circumstances necessary for a conviction . . . establish a culpable mental state adequate to support a finding of moral turpitude." Id. at 1195 (emphasis added). The BIA noted that a conviction for aggravated DUI required a showing that the defendant knew or should have known that his license was suspended and thus that he should not be driving under any circumstances. Id. at 1195–96. Accordingly, the BIA concluded that "a person who drives while under the influence, knowing that he or she is absolutely prohibited from driving, commits a crime so base and so contrary to the

7

currently accepted duties that persons owe to one another and to society in general that it involves moral turpitude." Id. at 1196.

Here, the BIA relied, in part, on the Third Circuit's decision in Knapik, which concluded that reckless endangerment under New York law was a crime involving moral turpitude. The New York statute at issue provided, "'A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person.'" Knapik, 384 F.3d at 86 n.1 (quoting N.Y. Penal Law § 120.25). The Third Circuit reviewed the BIA's precedent assessing whether criminally reckless conduct could be a crime involving moral turpitude and summarized that "since Medina, the BIA consistently has interpreted moral turpitude to include recklessness crimes if certain statutory aggravating factors are present. For example, the BIA limits moral turpitude to crimes in which a defendant consciously disregards a substantial risk of serious harm or death to another." Id. at 89–90.

The Knapik Court stated that reckless endangerment was a "much more severe offense than drunk driving, which almost certainly does not involve moral turpitude." Id. at 90. The Third Circuit further noted that New York's reckless endangerment statute contained the aggravating factor of requiring that a defendant create a "grave risk of death to another person under circumstances evincing a

depraved indifference to human life." Id. (quotation marks omitted). The Knapik

Court rejected Knapik's argument that his conviction was distinguishable from

manslaughter or assault with a deadly weapon (which the BIA had concluded were

crimes involving moral turpitude) because the reckless endangerment statute did

not require injury to an individual, stating, "With regard to reckless acts, moral

turpitude inheres in the conscious disregard of a substantial and unjustifiable risk

of severe harm or death. Knapik's good fortune in not injuring or killing anyone

does not change the quality of his actions." Id. at 90 n.5. Thus, applying deference

to the BIA's determination that the reckless endangerment conviction was a crime

involving moral turpitude, the Third Circuit concluded, "[i]n this context, the BIA

could reasonably conclude that the elements of depravity, recklessness and grave

risk of death, when considered together, implicate accepted rules of morality and

the duties owed to society."[5] Id. at 90.

With this precedent in mind, we address whether Georgia's criminal reckless

conduct statute is a crime involving moral turpitude.

## C.    Georgia's Criminal Reckless Conduct Statute

---

[5]However, the Third Circuit concluded that Knapik's conviction for attempted reckless endangerment was not a crime involving moral turpitude. Knapik, 384 F.3d at 91–92 ("Attempted reckless endangerment is not a crime involving moral turpitude because, categorically speaking, the concept makes no sense. Attempt (necessarily requiring intent to commit a crime) is inconsistent with recklessness (which, by definition, implies acting without intent).").

Whether criminal reckless conduct under Georgia law involves moral turpitude is an issue of first impression in this circuit.  The Georgia statute provides, in relevant part:

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

Ga. Code Ann. § 16-5-60(b).

Under a categorical analysis of the statutory definition and nature of the crime of reckless conduct under Georgia law, we are convinced that it requires a sufficiently culpable mental state and is inherently a crime involving moral turpitude.  First, the Georgia reckless conduct statute, like the statute analyzed in Medina, penalizes an individual for "consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person."  Ga. Code Ann. § 16-5-60(b).  Thus, the Georgia criminal reckless conduct statute requires a person (1) to have an actual awareness of a "substantial and unjustifiable risk" that his action or omission will cause harm or endanger the safety of others, and (2) to act while "consciously disregarding" this "substantial and unjustifiable risk."  See Knapik, 384 F.3d at 90 ("[T]he BIA limits moral turpitude to crimes in which a defendant consciously disregards a substantial

10

risk of serious harm or death to another.").

Second, the Georgia criminal reckless conduct statute, like the statute at issue in Medina, requires that "the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ga. Code Ann. § 16-5-60(b). In other words, a person's conduct must go far beyond mere negligence so as to constitute a "gross deviation" from the standard of care expected from a reasonable person. Cf. In re Perez-Contreras, 20 I. & N. Dec. 615, 619 (BIA 1992) (concluding that conviction for third-degree assault under Washington law, defined as criminal negligence that causes bodily harm, was not a crime involving moral turpitude because "there was no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk").

Third, the Georgia criminal reckless conduct statute requires that a person's "gross deviation" from the standard of care either "causes bodily harm to or endangers the bodily safety of another person." Ga. Code Ann. § 16-5-60(b). Thus, the Georgia reckless conduct statute does not punish an individual for merely disregarding the risk that his act or omission will cause harm or endanger the safety of others. Rather, it requires that an individual's conscious disregard of such a risk actually results in bodily harm to or endangerment of the bodily safety of another person. Furthermore, the fact that a person can be convicted of criminal reckless conduct under Georgia law without actually causing physical injury to another

11

person does not alter the baseness or depravity of the person's actions. Keungne's good fortune in not injuring or killing someone does not the change the quality of his actions or the culpability of his mental state. See Knapik, 384 F.3d at 90 n.5 (rejecting the argument that a conviction for reckless endangerment was not a crime involving moral turpitude because it did not require injury to an individual); see also Vuksanovic, 439 F.3d at 1311 (concluding that second-degree arson under Florida law, which required only that a person "'damages or causes to be damaged any structure,'" was a crime involving moral turpitude (quoting Fla. Stat. § 806.01(2))).[6]

Considering the totality of these required elements, we conclude that criminal reckless conduct under Georgia law inherently involves "'an act of baseness . . . in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" Vuksanovic, 439 F.3d at 1311 (quoting Itani, 298 F.3d at 1215) (brackets omitted). Part of the duties that a man owes to his fellow men and society is that he will exercise reasonable care to avoid the risk of causing harm or endangering others. When a person grossly deviates from the standard of care by consciously disregarding a "substantial and unjustifiable risk" that his

---

[6]The Florida statute also required that the offense be committed "'willfully and unlawfully, or while in the commission of any felony.'" Vuksanovic, 439 F.3d at 1311 (quoting Fla. Stat. § 806.01(2)).

actions or omissions will cause harm or endanger the safety of others and his actions or omissions actually cause bodily harm to or endanger the bodily safety of others, he has exhibited the "baseness" in the duties owed to society that constitutes moral turpitude. See Knapik, 384 F.3d at 90 (concluding that conviction under New York's first-degree reckless endangerment statute was a crime involving moral turpitude).[7]

Therefore, because we conclude that a conviction for criminal reckless conduct under Georgia law is a crime involving moral turpitude and Keungne raises no constitutional claims or questions of law, we are deprived of jurisdiction to review Keungne's petition for review under 8 U.S.C. § 1252(a)(2)(C).

**PETITION DISMISSED.**

---

[7]Based on In re Fualaau, 21 I. & N. Dec. 475 (BIA 1996), Keungne contends that an assault of this nature cannot amount to a crime of moral turpitude absent the infliction of serious bodily injury. We disagree. In Knapik, which was decided after Fualaau, the BIA concluded (and the Third Circuit agreed) that New York's reckless endangerment statute was a crime involving moral turpitude, even though it did not require actual bodily injury. Knapik, 384 F.3d at 86 n.1. Moreover, after Fualaau, the en banc BIA has not required actual bodily injury for a crime to be one involving moral turpitude. See Lopez-Meza, 22 I. & N. Dec. at 1194–96 (1999) (concluding that simple DUI was a strict liability crime and was not a crime involving moral turpitude but also concluding that aggravated DUI was a crime involving moral turpitude because it required a showing that the defendant knew or should have known that his licensed was suspended and a person who drives under the influence of alcohol or drugs while knowing he is absolutely prohibited from driving has a culpable mental state); see also Medina, 15 I. & N. Dec. at 612–14 (concluding that aggravated assault, which did not require any bodily injury but only required that an assault was committed recklessly while using a deadly weapon, was a crime involving moral turpitude). We cannot say that the BIA's decision in Keungne's case was an unreasonable interpretation of its precedent.

13