[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13105

_____

Agency No. A089-427-907


NIDAL KHALID NASRALLAH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 14, 2019)


Before TJOFLAT, WILLIAM PRYOR, and GILMAN,* Circuit Judges.

GILMAN, Circuit Judge:

_____

* Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Petitioner Nidal Khalid Nasrallah, a native and citizen of Lebanon, pleaded guilty to two counts of receiving stolen property in interstate commerce. An immigration judge (IJ) determined that one of those convictions made Nasrallah subject to removal as an alien convicted of a crime involving moral turpitude, but granted him a deferral of removal under the Convention Against Torture (CAT). On appeal, the Board of Immigration Appeals (BIA) held that the IJ erred by granting Nasrallah a deferral and ordered his removal.

Nasrallah filed a timely petition for review, arguing that (1) the IJ acted with prejudicial bias, (2) the BIA erred in determining that Nasrallah's conviction constituted a "crime involving moral turpitude," (3) the BIA erred in concluding that Nasrallah committed a "particularly serious crime," and (4) the BIA erred in overturning the IJ's determination that Nasrallah was eligible for a deferral of removal under the CAT. For the reasons set forth below, we **DENY IN PART AND DISMISS IN PART** Nasrallah's petition for review.

## I.    BACKGROUND

Nasrallah was 17 years old when he entered the United States on a tourist visa in 2006. He became a lawful permanent resident the following year.

On November 11, 2011, the United States government filed an indictment against Nasrallah, charging him under 18 U.S.C. § 2315 with eight felony counts of receiving stolen property in interstate commerce. The indictment alleged that

2

Nasrallah knowingly purchased and received stolen cigarettes for the purpose of resale.  He allegedly purchased at least 273 cases of cigarettes, with a total wholesale value of $587,096, in the course of eight separate transactions between December 2010 and August 2011.

Pursuant to a plea bargain agreement, Nasrallah pleaded guilty to two of the eight counts, and the government dismissed the others.  Nasrallah was then sentenced to 12 months' imprisonment on each count, to be served concurrently. He was also ordered to forfeit all monetary proceeds from the resale of the stolen property.  Nasrallah began his sentence in August 2014 after the district court permitted him to defer his sentence for one year so that Nasrallah could complete his college degree.

While Nasrallah was incarcerated, U.S. Immigration and Customs Enforcement (ICE) determined that Nasrallah's convictions under 18 U.S.C. § 2315 rendered him removable as an alien convicted of an "aggravated felony." The relevant statute defines an "aggravated felony" to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(G).  This prompted Nasrallah to request the district court to reduce his prison sentence from one year to 364 days, which the court did.  As a result, Nasrallah was not classified as an aggravated felon under 8 U.S.C. § 1101(a)(43)(G).

3

The government subsequently sought to remove Nasrallah under 8 U.S.C. § 1227(a)(2)(A)(i), which permits the removal of any alien convicted of a "crime involving moral turpitude" committed within five years after the date of admission for which a sentence of one year or longer may be imposed. Nasrallah then applied for withholding of removal and CAT protection because these forms of relief allow an individual convicted of a crime involving moral turpitude to avoid removal. In Nasrallah's application, he alleged that he would be tortured and persecuted in Lebanon by groups such as Hezbollah and ISIS because of his Druze religion and western ties.

Nasrallah claimed that, while living in Lebanon, he and a friend encountered members of Hezbollah on a mountain. The Hezbollah members shot guns in the air and shouted for Nasrallah and his friend to stop. Nasrallah ran away and jumped off a cliff to escape, severely injuring his back.

The government also contended that Nasrallah had been convicted of a particularly serious crime, making him ineligible for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). Nasrallah argued that his conviction under 18 U.S.C. § 2315 neither involved moral turpitude nor was a particularly serious crime. According to the indictment, however, Nasrallah knowingly purchased the cigarettes in question believing that they were obtained from violent thefts in which individuals hijacked trucks and robbed guarded storage facilities. Nasrallah

also procured $249,500 in cash to purchase the cigarettes, which the government contends is an indication of a significant level of criminal sophistication and organization.

The IJ concluded that Nasrallah could be removed both because he had committed a crime involving moral turpitude and because he had committed a particularly serious crime. In explaining her reasoning, the IJ noted that cigarette trafficking is connected to organized crime and terrorist groups. Although nothing in the record suggests that Nasrallah was directly involved with such organizations, the IJ reasoned that "all participation in the black market runs the risk of supporting these entities" and "motivating their dangerous criminal activities."

The IJ nevertheless determined that Nasrallah was eligible for deferral of removal under the CAT because he had established a clear probability of torture in Lebanon. She relied on Nasrallah's chance encounter with Hezbollah, background evidence that the Lebanese government acquiesces in Hezbollah activity, and information that ISIS targets the Druze in Syria and Lebanon. Moreover, the IJ found that Nasrallah's "western ties" could subject him to torture if he were removed.

Both the government and Nasrallah appealed the IJ's decision to the BIA. On appeal, the BIA agreed with the IJ's conclusion that Nasrallah's convictions involved moral turpitude and were particularly serious crimes, but reversed the IJ's

5

grant of CAT protection.  The BIA determined that Nasrallah's single encounter with Hezbollah did not constitute past torture and that generalized civil strife in Lebanon did not show that Nasrallah would "personally be targeted for harm rising to the level of torture if removed to Lebanon."  This timely petition for review followed.

## II.    ANALYSIS

### A.    Standard of review

"We review only the [BIA]'s decision, except to the extent that it expressly adopts the IJ's opinion." *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "This court reviews administrative fact findings under the highly deferential substantial evidence test." *Adefemi v. Ashcroft,* 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). "In sum, findings of fact made by administrative agencies, such as the BIA, may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Id.* at 1027.  We review conclusions of law de novo.  *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 820 (11th Cir. 2007).

### B.    Alleged prejudicial bias

Nasrallah alleges that the IJ exhibited prejudicial bias by suggesting a potential connection between Nasrallah's black-market transactions and organized

crime or terrorist activity. The IJ asked Nasrallah's counsel for background evidence about these organizations and the black market and then justified her decision by using the evidence produced. Nasrallah further alleges that the IJ prejudicially connected him to terrorism because of his Middle Eastern origins.

The BIA concluded that the IJ did not exhibit bias. It noted that an IJ must evaluate "the overall level of harm to the community" arising from any crimes committed by an immigrant. The IJ found no evidence that Nasrallah was personally involved in organized crime or terrorism, but she noted that illicit cigarette trafficking often supports such activities. As stated by the IJ, "all participation in the black market runs the risk of supporting these entities."

Nasrallah has failed to demonstrate that the IJ's decision exhibits bias or that her request for background information was based on Nasrallah's race, religion, or national origin. IJs have broad discretion to conduct their hearings, although an IJ may violate a petitioner's due process rights by failing to act as "an impartial trier of fact." *Matter of Lam*, 14 I. & N. Dec. 168, 171 (B.I.A. 1972); *see also Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016) (noting that IJs must "ensure that their positions as neutral arbiters do not take on that of advocates"). We conclude that Nasrallah has failed to identify any prejudicial bias or impermissible advocacy by the IJ.

7

### C.    Crime involving moral turpitude

Nasrallah next argues that the BIA erred in classifying his conviction as a crime involving moral turpitude.  We review questions of statutory interpretation, such as whether an offense involves a crime of moral turpitude, "*de novo*, but defer to the interpretation of the BIA if it is reasonable."  *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013).

The term "crime involving moral turpitude" is not defined by statute.  But this court in *Cano* stated that it involves "[a]n act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."  *Id.* (alteration in original) (quoting *United States v. Gloria*, 494 F.2d 477, 481 (5th Cir. 1974)).  "Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct."  *Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002).  To decide whether an offense constitutes a crime involving moral turpitude, we apply a categorical approach and look to the statutory definition of the crime rather than to the underlying facts of the conviction.  *Cano*, 709 F.3d at 1053.  Any conviction under a statute categorically involves moral turpitude when "the least culpable conduct necessary

8

to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1241 (11th Cir. 2016) (citation omitted).

Nasrallah was convicted of receiving stolen property, in violation of 18 U.S.C. § 2315. A defendant violates this provision when he "receives, possesses, conceals, stores, . . . sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more . . . which have crossed a State or United States boundary . . . , knowing the same to have been stolen, unlawfully converted, or taken." *Id.* The Board and our sister circuits have consistently held that a crime involving the receipt of stolen property involves moral turpitude if it "specifically requires knowledge of the stolen nature of the goods." *See Matter of Salvail*, 17 I. & N. Dec. 19, 20 (B.I.A. 1979); *accord De Leon v. Lynch*, 808 F.3d 1224, 1232 (10th Cir. 2015); *Hashish v. Gonzales*, 442 F.3d 572, 576 n.4 (7th Cir. 2006); *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 637 (3d Cir. 2002); *Michel v. I.N.S.*, 206 F.3d 253, 263 (2d Cir. 2000); *United States v. Castro*, 26 F.3d 557, 558 n.1 (5th Cir. 1994).

Nasrallah argues, however, that receiving stolen property in interstate commerce in violation of 18 U.S.C. § 2315 is not categorically a crime of moral turpitude because that section lacks a separate element of unlawful or fraudulent intent. But there is no requirement that a crime of moral turpitude have a separate

9

intent element. Punishment under 18 U.S.C. § 2315 requires that the defendant have knowledge that the items were stolen, unlawfully converted, or taken. That is enough to qualify as a crime involving moral turpitude and thus bar Nasrallah from withholding of removal. *See Matter of Salvail*, 17 I. & N. Dec. at 20.

## D.    Particularly serious crime

Binding precedent holds that "[t]his Court lacks jurisdiction to review a final order of removal if the alien is removable under 8 U.S.C. § 1227(a)(2)(A)(i) for being convicted of a crime involving moral turpitude within five years of admission for which a sentence of one year or longer may be imposed." *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009) (citing 8 U.S.C. § 1252(a)(2)(C); *Vuksanovic v. U.S. Att'y Gen.,* 439 F.3d 1308, 1310 (11th Cir. 2006)). A petitioner so convicted is subject to what this court has referred to as the "criminal-alien jurisdictional bar." *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 806 n.12 (11th Cir. 2016).

Nasrallah is subject to this jurisdictional bar because of his conviction. We therefore lack jurisdiction to review whether Nasrallah's conviction involved a particularly serious crime. *See Keungne*, 561 F.3d at 1283. Our review is limited to "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(D).

Nasrallah contends that the IJ and the BIA misapplied factors used to determine whether he committed a particularly serious crime because he was

10

convicted of a crime "solely against property." He argues that crimes against property are less likely to be considered a particularly serious crime. *But see Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982) (recognizing that "there may be instances where crimes (or a crime) against property will be considered" particularly serious crimes), *superseded in part by amendment to 8 U.S.C. § 1253(h)(2), as recognized in Matter of C-*, 20 I. & N. Dec. 529, 533 (B.I.A. 1992).

Nasrallah's challenge, which asks us to reweigh the factors involved in that discretionary determination, does not involve a constitutional claim or a question of law. *See Fynn v. U.S. Att'y Gen.*, 752 F.3d 1250, 1252 (11th Cir. 2014) ("Argument that the IJ or BIA abused its discretion by improperly weighing evidence is . . . insufficient to state a legal or constitutional claim."). This court therefore lacks jurisdiction to review the BIA's particularly-serious-crime determination regarding Nasrallah.

### E.    Deferral of removal

Nasrallah's final argument is that the BIA should have granted him a deferral of removal under the CAT. To qualify for such a deferral of removal, an applicant must demonstrate that he or she will more likely than not be tortured in the country of removal. Torture is defined as:

> (1) [A]n act causing severe physical or mental pain or suffering;
> (2) [that is] intentionally inflicted; (3) for a proscribed purpose; (4) by

11

or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Matter of V-X-*, 26 I. & N. Dec. 147, 153 (B.I.A. 2013) (citing 8 C.F.R. § 1208.18(a)).  Under the relevant CAT regulations, the perpetrator must have specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 1208.18(a)(5).

The BIA determined that Nasrallah's isolated chance encounter with the members of Hezbollah on a mountain in Lebanon did not constitute torture under the CAT.  Although the incident was undoubtedly traumatizing for Nasrallah and his friend, the BIA reached this conclusion because there is no evidence that the Hezbollah members "specifically intended to inflict such severe pain or suffering." *See Jean-Pierre v. Att'y Gen.*, 500 F.3d 1315, 1323 (11th Cir. 2007) (citing 8 C.F.R. § 1208.18(a)(5)); *see also Cole v. Holder*, 659 F.3d 762, 773 (9th Cir. 2011) ("Acts that merely have the foreseeable result of inflicting harm are not sufficient; the actor [must] intend the actual consequences of his conduct." (alteration in original) (internal quotation marks and citation omitted)).  Because Nasrallah presented no other instances of alleged past torture, the BIA found as a matter of law that he had not been tortured in Lebanon.  We agree with the BIA's determination.

12

Nasrallah also contends that the BIA erred in determining that he would not likely be singled out for torture if he was removed.  A determination about the likelihood of future harm, however, is a finding of fact, not a question of law.  *See Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 533 (11th Cir. 2013) (holding that "we cannot review the BIA's decision that [petitioner] would not be tortured" because "[t]he likelihood of harm is a factual question" and the criminal-alien jurisdictional bar applies).  This restricts our review of the BIA's CAT determination to Nasrallah's legal and constitutional claims.  *See id.*; *Keungne*, 561 F.3d at 1283.  We therefore lack jurisdiction to review Nasrallah's argument about the likelihood of future harm in Lebanon.

## III.   CONCLUSION

For all the reasons set forth above, we **DENY IN PART AND DISMISS IN PART** Nasrallah's petition for review.