[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13872
Non-Argument Calendar
_____

Agency No. A078-664-545

ARMAN ERITSIAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 17, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Arman Eritsian seeks review of the Board of Immigrations Appeals's ("BIA") order affirming the immigration judge's order of removal and denial of his applications for asylum, withholding of removal, Convention Against Torture ("CAT") relief, and for a waiver of inadmissibility in conjunction with an adjustment of status. For the reasons discussed below, we deny in part and dismiss in part Eritsian's petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Eritsian is an ethnic Armenian Christian and native of Azerbaijan who originally entered the United States in 2000. In 2002, an immigration judge in California granted Eritsian's application for asylum. On July 20, 2007, Eritsian's legal status was adjusted to that of a lawful permanent resident of the United States, which was made retroactive to July 20, 2006.

In the years following his legal status change, Eritsian was convicted of two separate crimes. On January 5, 2010, Eritsian was convicted in California for conspiracy to commit grand theft, in violation of California Penal Code §§ 182(a)(1) and 487(a) (2009) (the "2010 conviction"), and was subsequently sentenced to 180 days of imprisonment and three years of probation. Then, on April 13, 2015, Eritsian was convicted in the United States District Court for the Southern District of California for conspiracy to commit mail fraud, wire fraud, and money laundering, in violation of 18 U.S.C. § 371 (the "2015 conviction"). As a result of the 2015

conviction, Eritsian was sentenced to thirty months of imprisonment and ordered to pay $8,323 in restitution to the government.

On August 1, 2017, the United States Department of Homeland Security ("DHS") issued a Notice to Appear (the "NTA") to Eritsian while he was incarcerated with the Bureau of Prisons in Folkston, Georgia. In the NTA, Eritsian was charged as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude that did not arise out of a single scheme of criminal misconduct. Eritsian was also charged as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, i.e., an attempt or conspiracy to commit an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000, as described in 8 U.S.C. § 1101(a)(43)(M)(i) and (U). Eritsian was subsequently moved to the Stewarts Detention Center in Lumpkin, Georgia. On January 10, 2018, the government submitted documents concerning Eritsian's 2010 and 2015 convictions to the original IJ.[1] As to the 2015 conviction for conspiracy to commit mail fraud, wire fraud, and money laundering, the government submitted the grand jury's indictment from September 2013. Count 1 of the indictment alleged that, from 2010 to 2012, Eritsian and his co-conspirators unlawfully obtained personal identity theft

---

[1] During the proceedings below, Eritsian's case was transferred to the immigration judge who ultimately issued the order of removal in this case.

information from several victims to file and receive fraudulent tax returns and launder the proceeds. The indictment further alleged that Eritsian and his co-conspirators had filed more than 400 fraudulent tax returns, claiming tax refunds totaling over $3,000,000, and had used complex methods to conceal their activities. The indictment listed specific actions showing that Eritsian and his co-conspirators had conspired to file a total of ten fraudulent tax returns and had claimed a total of approximately $87,547 in fraudulent returns. Eritsian pled guilty to Count 1 of the indictment.

On February 20, 2018, Eritsian submitted written pleadings in response to the NTA, admitting all the allegations therein but denying both charges of removability. Eritsian also filed a motion to terminate the removal proceedings against him. At a February 22, 2018, hearing, the original immigration judge denied the motion to terminate. As to the first charge of removability, the original immigration judge reviewed the indictment from Eritsian's 2015 conviction and found that Eritsian had been convicted of an aggravated felony, as the government had shown the loss to the victims for the offense was more than $10,000 based on the Supreme Court's decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009). As to the second charge of removability, the original immigration judge found the 2015 conviction to be a crime involving moral turpitude but continued the issue of whether the 2010 conviction was also for a crime involving moral turpitude.

4

Eritsian also filed a motion to transfer venue from Georgia to California, arguing that because he and his family had lived in California for almost twenty years and because the testimony of his parents, who had serious medical conditions that would prevent them from traveling to Georgia, would be critical to litigating his case, the proceedings should be moved to California. The original immigration judge denied this motion, noting that the rules of evidence were more relaxed in immigration proceedings and finding that, as such, Eritsian would not be prejudiced by having the venue of his case remain in Georgia. After the case was transferred from the original immigration judge to another immigration judge, Eritsian renewed his motion to transfer venue, which the new immigration judge denied at a September 13, 2018, hearing.

On December 11, 2018, Eritsian filed a motion to reconsider his motion to terminate the proceedings, presenting the same arguments as his original motion and further arguing that he was eligible for a waiver of admissibility. On January 15, 2019, the immigration judge construed the motion to reconsider as a second motion to terminate and denied the motion. In his order, the immigration judge determined that Eritsian's 2010 and 2015 convictions were both for crimes involving moral turpitude and that the potential loss of conspiracy for which Eritsian was convicted in his 2015 conviction exceeded $10,000, rendering the offense an aggravated

felony. As such, the immigration judge found that the government had established Eritsian's deportability on both charges.

Eritsian also filed an application for asylum, withholding of removal, and relief under provisions of CAT, as well as an application for a waiver of inadmissibility in conjunction with an adjustment of his legal status. In his pre-hearing brief, Eritsian argued that he was eligible for relief under 8 U.S.C. § 1182(h) because his wife was a United States citizen, he had adjusted his status to that of a lawful permanent resident while he was in the United States, and denial of relief would cause extreme hardship to himself and his family. Eritsian further asserted that several factors weighed in favor of granting him relief, including: (1) his strong family ties in the United States; (2) his nearly twenty years of residence in the United States; (3) the amount of hardship he and his family would experience if he was removed, as he would be unable to financially support his family or to care for his elderly parents and he would be at risk of persecution in Azerbaijan for being an ethnic Armenian Christian; (4) his value and service to the community; and (5) the evidence of his rehabilitation, remorse, and good character. Eritsian claimed that the only negative factors against granting him relief were his convictions, which he argued "were a result of his getting involved with the wrong people." On March 20, 2019, the immigration judge held a hearing on Eritsian's applications for relief. At the hearing, Eritsian, Eritsian's wife, and an expert witness on country conditions in

Azerbaijan all testified, and Eritsian submitted exhibits and his father's affidavit to the immigration judge in support of his applications.

The immigration judge denied Eritsian's applications. Addressing Eritsian's waiver of inadmissibility claim, the immigration judge found that while Eritsian was not barred from receiving a waiver under § 1182(h) because his convictions were for nonviolent financial crimes, Eritsian had failed to show that he merited a favorable exercise of discretion or that his qualifying relatives would suffer extreme hardship upon his removal. As to Eritsian's withholding of removal claim, the immigration judge found that Eritsian had demonstrated past persecution such that he was entitled to a presumption of a future threat to his life or freedom, but that the government had rebutted that presumption by showing a fundamental change in circumstances in Azerbaijan regarding the treatment of Armenian Christians. As to the CAT claim, the immigration judge determined that Eritsian had not showed he would personally be at risk of torture upon his removal, as the likelihood of Eritsian being tortured in Azerbaijan was merely speculative.

Eritsian appealed the immigration judge's decision to the BIA. On September 5, 2019, the BIA upheld the immigration judge's decision and dismissed the appeal. As to removability, the BIA affirmed the immigration judge's determination that the loss to Eritsian's victims exceeded $10,000, rendering the 2015 conviction an aggravated felony, and found that the immigration judge properly applied a

7

"circumstance-specific analysis" to determine the loss amount. The BIA rejected Eritsian's argument that the loss tied to the 2015 conviction was limited to the $8,323 that he owed as restitution, as the immigration judge was required to determine "the potential loss" associated with the offense. The BIA noted that Count 1 of the indictment described Eritsian and his co-conspirators' scheme to defraud the Internal Revenue Service by filing fraudulent tax returns, which resulted in more than 400 fraudulently filed tax returns for the tax years of 2009 and 2011 for tax refunds totaling more than $3,000,000. The BIA further noted that Count 1 of the indictment listed ten specific instances of fraudulently filed tax refunds that resulted in refunds totaling $87,547.

The BIA also affirmed the immigration judge's determination that Eritsian's two prior convictions both qualified as crimes involving moral turpitude. As to the 2010 conviction for grand theft under California law, the BIA noted that "grand theft" under California Penal Code § 487(1) incorporated the general definition of "theft" set forth in California Penal Code § 484, which only covered takings that were committed with the specific intent to permanently deprive an owner of his property, and that "the United States Court of Appeals for the Ninth Circuit, while not the controlling circuit, has consistently held that California theft, whether grand or petty, is a categorical [crime involving moral turpitude]." Accordingly, the BIA concluded that the immigration judge had properly found Eritsian removable.

8

The BIA then turned to Eritsian's applications for relief. As to Eritsian's application for a waiver of inadmissibility, the BIA found it was unnecessary to address the immigration judge's determination that Eritsian was ineligible for a waiver because he did not prove any qualifying relative would suffer hardship if he was removed, as Eritsian did "not merit such waiver in discretion." The BIA "weigh[ed] the adverse factors evidencing his undesirability as a permanent resident against the social and humane considerations presented on his behalf to determine whether, on balance, a grant of relief would be in the best interests of [the United States]." The BIA found that while Eritsian's equities, including his family ties, for receiving a waiver were substantial, the complexity of Eritsian's fraud scheme and "his repeated acts of fraud and the general dishonesty irrespective of any alleged rehabilitation" demonstrated that Eritsian's continued residence would not be in the best interests of the United States. As such, the BIA denied his application for a waiver of inadmissibility. As to the asylum claim, the BIA determined that Eritsian was not eligible for asylum because his 2015 conviction constituted an aggravated felony. The BIA also rejected Eritsian's withholding of removal claim, agreeing with the immigration judge's determination that the government had shown that there had been a fundamental change in circumstances in Azerbaijan such that Eritsian "no longer ha[d] a clear probability of future persecution in Azerbaijan." Additionally, the BIA affirmed the immigration judge's denial of CAT relief. The

9

BIA concluded that the IJ did not clearly err in finding that Eritsian had not presented sufficient evidence to establish that he would "more likely than not . . . be tortured if forced to return to Azerbaijan" and that his fear of torture was "speculative."

Finally, the BIA addressed Eritsian's due process claims. Reviewing the record, the BIA found that Eritsian's claim that the immigration judge was biased to be without merit, as the immigration judge's "desire for judicial efficiency does not equate to bias or pre-judgement [sic] of the respondent's claim." The BIA also rejected Eritsian's argument that his due process rights were violated by the immigration judge's denial of his motions to transfer venue based on Eritsian's family members living in California. The BIA found Eritsian had not demonstrated that he was deprived of a fair hearing, as Eritsian was able to submit affidavits from his family members in support of his applications and ultimately declined to pursue telephonic testimony from his parents. Accordingly, the BIA dismissed Eritsian's appeal. Eritsian petitioned this Court for review of the BIA's determination.

## II.    ANALYSIS

In his petition, Eritsian argues that the BIA erred for several reasons. First, Eritsian claims that the BIA erred in determining that he was a removable alien and ineligible for asylum because his 2015 conviction was not for a crime that qualifies as an "aggravated felony" and his 2010 state conviction was not for a "crime involving moral turpitude." Eritsian also contends that the BIA erred in denying his

various applications for relief and that his due process rights were violated as the immigration judge exhibited bias towards him and his motions to transfer venue were denied.

"As an initial matter, we must review whether we have jurisdiction to entertain [Eritsian's] petition for review." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240 (11th Cir. 2016). We determine the extent of our subject-matter jurisdiction de novo. *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1286 (11th Cir. 2014). This Court lacks jurisdiction to review any final removal order against an alien who is removable for committing "an aggravated felony" or two or more "crimes involving moral turpitude." *See* 8 U.S.C §§ 1227(a)(2)(A)(ii)–(iii), 1252(a)(2)(C). "However, we retain jurisdiction to determine whether the statutory conditions for limiting judicial review exist, i.e., whether the petitioner is '(1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense.'" *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009) (quoting *Vuksanovic v. U.S. Att'y Gen.*, 439 F.3d 1308, 1310–11 (11th Cir. 2006)). If these conditions are met, § 1252(a)(2)(C) generally divests us of jurisdiction to review the removal order. *Id.* at 1283–84. Additionally, we retain jurisdiction to review constitutional claims and questions of law in an otherwise unreviewable order. *See* 8 U.S.C. § 1252(a)(2)(D). Nonetheless, "a petitioner must allege at least a colorable constitutional violation." *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Saloum v.*

11

*U.S. Citizenship & Immigr. Servs.*, 437 F.3d 238, 243 (2d Cir. 2006)).  A petitioner cannot "create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."  *Id.* (quoting *Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)).  We therefore first address Eritsian's arguments concerning removability.

Eritsian contends that the BIA erred in determining that his 2015 conviction for conspiracy to commit fraud qualified as an "aggravated felony" and that his 2010 conviction for conspiracy to commit grand theft constituted a "crime involving moral turpitude."  "We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision.  Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of that agreement."  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (footnote omitted) (citation omitted).  Whether a conviction qualifies as an "aggravated felony" is a legal question that we review *de novo.  Dixon v. U.S. Att'y Gen.*, 768 F.3d 1339, 1341 (11th Cir. 2014).  Likewise, "we review *de novo* the legal question of whether an alien's conviction qualifies as a crime involving moral turpitude."  *Gelin*, 837 F.3d at 1240.

We first consider whether the BIA correctly determined that Eritsian's 2015 conviction was for an offense that constitutes an aggravated felony.  Under 8 U.S.C. § 1101(a)(43), an "aggravated felony" is defined, in relevant part, as an offense that

12

"involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" or "an attempt or conspiracy to commit an offense described in [§ 1101(a)(43)]." 8 U.S.C. § 1101(a)(43)(M)(i), (U). With respect to a conspiracy to commit a fraud or deceit crime, the BIA has determined that the government "need not prove an *actual* loss to victims of more than $10,000; instead, it will be sufficient if the *potential* loss was more than $10,000." *In re S-I-K*, 24 I. & N. Dec. 324, 327 (BIA 2007) (emphasis in original) (citing *Li v. Ashcroft*, 389 F.3d 892, 896 n.8 (9th Cir. 2004)). The government has the burden of showing the loss amount by "clear and convincing" evidence. *Nijhawan*, 557 U.S. at 42 (quoting 8 U.S.C. § 1229a(c)(3)(A)).

The Supreme Court's decision in *Nijhawan* is instructive. In *Nijhawan*, the petitioner was an alien who was convicted of conspiracy to commit mail fraud, wire fraud, bank fraud, and money laundering. *Id.* at 32. The jury made no finding about the loss amount, and the statutes the petitioner was convicted under were silent as to the loss amounts. *See id.* at 32–33. But the petitioner stipulated at sentencing that the loss amount exceeded $100 million, and the court ordered restitution in the amount of $683 million. *Id.* at 32. Following the petitioner's conviction, the government sought to remove the petitioner, claiming that he had been convicted of an aggravated felony. *Id.* at 33. The Supreme Court held that "Congress did not intend [§ 1101(a)(43)(M)(i)'s] monetary threshold to be applied categorically, *i.e.*,

13

to only those fraud and deceit crimes generically defined to include that threshold." *Id.* at 40. Rather, the Supreme Court determined that "the monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion," i.e., looking to "the facts and circumstances underlying an offender's conviction." *Id.* at 34, 40. The Court noted that the loss amount "must 'be tied to the specific counts covered by the conviction.'" *Id.* at 42 (quoting *Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 107 (3d Cir. 2006)). Moreover, the Court found nothing unfair about the immigration judge relying upon "earlier sentencing-related material," including the petitioner's stipulation and the restitution order. *Id.* at 42.

While Eritsian concedes that *Nijhawan* is controlling, he contends that this case is distinguishable because, unlike in *Nijhawan*, the amount Eritsian was required to pay as restitution in his 2015 conviction was $8,323, an amount lower than the $10,000 threshold in § 1101(a)(43)(M)(i). Eritsian contends that the restitution order is the most clear and convincing evidence of the actual loss to the victims tied to his 2015 conviction and that, as such, the BIA erred in determining the 2015 conviction was an aggravated felony.

We disagree. The BIA properly applied a circumstances-specific approach to determine the loss tied to the 2015 conviction. Although Eritsian ultimately only had to pay $8,323 in restitution after he pled guilty, the BIA was permitted to look

to the grand jury's indictment in determining the loss. *See Nijhawan*, 557 U.S. at 42. Count 1 of the indictment detailed an extensive conspiracy by Eritsian and his co-conspirators to file more than 400 fraudulent tax returns and to obtain tax refunds totaling over $3,000,000. Additionally, Count 1 listed ten specific tax returns that were fraudulently filed that resulted in a total of $87,547 of fraudulent tax refunds being dispersed. Count 1 of the indictment, which Eritsian pled guilty to, thus shows that the 2015 conviction involved losses that were much greater than the $10,000 threshold. Accordingly, the BIA did not err by finding that Eritsian's 2015 conviction was for an offense qualifying as an aggravated felony and that he was removable under § 1227(a)(2)(A)(iii).

Although we find that the BIA correctly determined that Eritsian was removable under § 1227(a)(2)(A)(iii), for the sake of completeness, we address Eritsian's argument that he was not removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing two or more crimes involving moral turpitude. While "moral turpitude" is not statutorily defined, "this Court has held that it involves an 'act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" *Gelin*, 837 F.3d at 1240 (quoting *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013)). Generally, we use the categorical approach to determine whether a conviction for a particular crime

qualifies as a "crime[] involving moral turpitude." *Id.* at 1241. Under this approach, "we consider only the fact of conviction and the statutory definition of the offense, rather than the specific facts underlying the defendant's case." *Id.*; *see also Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002) ("Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct."). "In doing so, we ask 'whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude.'" *Gelin*, 837 F.3d at 1241 (quoting *Keungne*, 561 F.3d at 1284 n.3). In analyzing whether a state law offense constitutes a crime involving moral turpitude, this Court "may rely on court decisions in the convicting jurisdiction that interpret the meaning of the statutory language." *Id.* at 1243.

Eritsian contends that the BIA erred in finding that his 2010 conviction for conspiracy to commit grand theft in violation of California Penal Code §§ 182(a)(1) and 487(a) was a crime involving moral turpitude. Specifically, Eritsian claims that the California grand theft statute does not require that the offender intend to permanently deprive the victim of his or her property. This argument is without merit.

16

Under the California Penal Code § 487(a) (2009) in effect at the time Eritsian

was convicted of the offense,[2] "grand theft" was defined as theft committed "[w]hen

the money, labor, or real or personal property taken is of a value exceeding four

hundred dollars ($400)." California law further provides that a "theft" is committed

by any person who

> shall feloniously steal, take, carry, lead, or drive away the personal
> property of another, or who shall fraudulently appropriate property
> which has been entrusted to him or her, or who shall knowingly and
> designedly, by any false or fraudulent representation or pretense,
> defraud any other person of money, labor or real or personal property,
> or who causes or procures others to report falsely of his or her wealth
> or mercantile character and by thus imposing upon any person, obtains
> credit and thereby fraudulently gets or obtains possession of money, or
> property or obtains the labor or service of another . . . .

*Id.* § 484(a). The Supreme Court of California has long held that California's theft

statutes require "the intent to *permanently* deprive the owner of possession of the

property." *People v. Avery*, 38 P.3d 1, 3 (Cal. 2002) (emphasis in original); *see also*

*Castillo–Cruz v. Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009) ("Under Californian

law, a conviction for grand theft or petty theft . . . requires, in common with other

crimes of moral turpitude, 'the specific intent to deprive the victim of his property

permanently.'" (quoting *In re Albert A.*, 55 Cal. Rptr. 2d 217, 219 (Cal. Ct. App.

1996)); *People v. Bullard*, 460 P.3d 262, 266 (Cal. 2020) (noting that in the context

---

[2] California's grand theft statute was subsequently amended following Eritsian's 2010 conviction.

of grand theft of an automobile under California Penal Code § 487, the "statute had been interpreted to require an intent to deprive the car owner 'permanently of its value and to appropriate the property to the use and benefit of the person taking it'" (quoting *People v. Kehoe*, 204 P.2d 321, 323 (Cal. 1949))).  As we previously noted in an unpublished opinion, other "federal circuits courts have long considered theft offenses . . . to involve moral turpitude." *Jaimes–Lopez v. U.S. Att'y Gen.*, 675 F. App'x 870, 874 (11th Cir. 2017); *see, e.g.*, *Mendoza v. Holder*, 623 F.3d 1299, 1303–04 & n.8 (9th Cir. 2010) ("The BIA's determination [that robbery is a crime involving moral turpitude] is consistent with precedent in this and other circuits that theft crimes are [crimes involving moral turpitude]." (footnote omitted)).  Indeed, in *United States ex rel. McKenzie v. Savoretti*, 200 F.2d 546, 548 (5th Cir. 1952), a decision which is binding upon us,[3] the former Fifth Circuit held that "the crimes of forgery, larceny, uttering, and stealing . . . are regarded as involving moral turpitude."   Additionally, we note that the BIA has long held that "a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property." *In re Diaz–Lizarraga*, 26 I. & N. Dec. 847, 849–50 (BIA 2016) (emphasis in original) (collecting cases); *see also In re Flores*, 17 I. & N. Dec. 225, 228 (BIA 1980) ("A conspiracy to commit an

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981).

18

offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude."). Based on these principles, we find that Eritsian's 2010 conviction for committing grand theft in violation of California Penal Code § 487(a) to be a crime involving moral turpitude.[4] As Eritsian does not dispute that his 2015 conviction was for a crime involving moral turpitude, the BIA did not err in finding him removable for committing two crimes involving moral turpitude under § 1227(a)(2)(A)(ii).

Because the BIA correctly found that Eritsian was removable for committing an aggravated felony as well as for committing two crimes involving moral turpitude, we lack jurisdiction to review his final removal order, *see* 8 U.S.C §§ 1227(a)(2)(A)(ii)-(iii), 1252(a)(2)(C), except to review constitutional claims and questions of law, *see id.* § 1252(a)(2)(D). Regarding Eritsian's asylum claim, the BIA correctly found, as a matter of law, that Eritsian was ineligible for asylum as an alien who was "convicted by a final judgment of a particularly serious crime," i.e., an "aggravated felony." *See id.* § 1158(b)(2)(A)(ii), (B)(i).

Eritsian further contends that the BIA erred in denying his application for a waiver of inadmissibility, arguing that he should have been granted a waiver based

---

[4] We note that the Ninth Circuit has similarly held California theft crimes to be crimes involving moral turpitude. *See Flores Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008) (stating that petty theft offenses under California Penal Code §§ 484 and 488 are crimes of moral turpitude).

19

on the extreme hardship his removal would cause to his family.  Under 8 U.S.C. § 1252(a)(2)(B), our jurisdiction is limited in reviewing denials of discretionary relief such as waivers of inadmissibility under 8 U.S.C. § 1182(h).  Indeed, "we are precluded from reviewing 'any judgment regarding the granting of relief under [8 U.S.C. §§] 1182(h), 1182(i), 1229b, 1229c, or 1255' except to the extent that such review involves constitutional claims or questions of law."  *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (en banc) (quoting § 1252(a)(2)(B)(i), (D)).  A "garden-variety abuse of discretion argument" that an immigration judge failed to properly weigh the factual scenario that the alien presented does not raise a legal question.  *See Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196-97 (11th Cir. 2008).  Therefore, because Eritsian's arguments do not involve constitutional claims or questions of law but rather only concern the BIA's discretionary decision in weighing the facts and denying his application for waiver of inadmissibility, we are unable to review his waiver of inadmissibility claim.

As to Eritsian's other applications for relief, he has not raised any colorable constitution claims or questions of law over which we can exercise our jurisdiction.  We are unable to review Eritsian's withholding of removal claim, as his argument that the BIA erred in finding that Eritsian would not face future persecution in Azerbaijan is not based on a colorable constitution violation or question of law.  *See Arias*, 482 F.3d at 1284.  Similarly, we are unable to review Eritsian's CAT claim,

as he merely challenges the BIA's finding that he would more likely than not be subject to torture upon his return to Azerbaijan. *See Perez–Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231 (11th Cir. 2013) ("[T]he finding of the [BIA] that a petitioner seeking deferral of removal under the [CAT] failed to meet his burden of establishing that it was more likely than not that he would be tortured is an unreviewable fact finding under section 1252(a)(2)(C).").

Finally, we briefly address Eritsian's argument that he was deprived of due process. We review *de novo* constitutional challenges, including claims alleging due process violations. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). "It is well-established that the Fifth Amendment entitles petitioners in removal proceedings to due process of the law." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). "Due process requires that aliens be given notice and an opportunity to be heard in their removal proceedings." *Id.* A petitioner alleging a due process violation "must show that [he] was deprived of liberty without due process of law and that the purported errors caused [him] substantial prejudice," which requires a demonstration that "in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.* "However, 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (quoting *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th

21

Cir. 2008)).  Under 8 C.F.R. § 1003.20, an immigration judge has the discretion to change venue upon motion by one of the parties if there is "good cause."

Eritsian contends that his due process rights were violated by the multiple denials of his motions to transfer venue, arguing that he was unable to present "critical and compelling testimony from his parents" to corroborate his claims at his hearing and that, as such, he was severely prejudiced.  We disagree, as Eritsian has failed to demonstrate how he was deprived of a fair hearing or suffered substantial prejudice from the denial of the motions to transfer venue.  While Eritsian's parents were unable to testify in person, Eritsian was able to present his father's affidavit, photo evidence of his father's wounds, and his expert witness's in-person testimony.  Additionally, the BIA noted that the immigration judge discussed the possibility of telephonic testimony for Eritsian's parents but that Eritsian ultimately decided not to pursue that option.  Eritsian also broadly claims that the immigration judge was biased in evaluating his requests for relief and thus violated his due process rights.  However, this claim of bias by the immigration judge is merely an abuse of discretion argument cloaked as a constitutional violation.  *See Arias*, 482 F.3d at 1284.  As such, we lack jurisdiction to review the claim.

## III.  CONCLUSION

Accordingly, the BIA did not err in finding that Eritsian was removable both on the basis that he committed an aggravated felony and on the basis that he

committed two crimes involving moral turpitude.  We therefore deny his petition as to his removability claims as well as his asylum claim, as Eritsian is ineligible for asylum for having been convicted of an aggravated felony.  Furthermore, we dismiss the petition as to Eritsian's claims for waiver of inadmissibility, withholding of removal, and CAT relief, as we lack jurisdiction to review those claims.

**PETITION DENIED IN PART, DISMISSED IN PART.**